ACCEPTED
15-25-00121-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/3/2025 3:47 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00121-CV

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/3/2025 3:47:10 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE FIFTEENTH COURT OF APPEALS

**Hays County, Texas, Ruben Becerra, Debbie Ingalsbe, Michelle Cohen, Morgan Hammer, and Walt Smith, in their official capacities,**
*Appellants*,

v.

**Leslie Carnes, Jim Camp, Cathy Ramsey, and Gabrielle Moore,**
*Appellees.*

On Appeal from Case No. D-1-GN-25-002049,
In the 126th Judicial District Court of Travis County, Texas

## BRIEF OF AMICUS CURIAE
## THE TEXAS ASSOCIATION OF SCHOOL BOARDS
## LEGAL ASSISTANCE FUND
## IN SUPPORT OF APPELLANT HAYS COUNTY, TEXAS

Matthew Hines
State Bar No. 24120892
600 Congress Ave., Suite 2150
Austin, Texas 78701
mhines@mphlegal.com

Rosemarie Kanusky
State Bar No. 00790999
112 E. Pecan St., Suite 1310
San Antonio, Texas 78205
rkanusky@mphlegal.com

**MCCALL PARKHURST & HORTON L.L.P.**

*Attorneys for Amicus Curiae the Texas Association of
School Boards Legal Assistance Fund*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ....................................................................... ii

    I.     Identity and Statement of Interest of Amicus ....................................1

    II.    How Bonds Issue.................................................................................3

         A.     An election order seeks permission from the electorate to incur debt.....................................................................................3

         B.     Notice of the meeting to order an election is not notice of the election. ...............................................................................5

         C.     A bond order authorizes the debt to be incurred........................5

    III.   Argument and Authorities...................................................................7

         A.     This Court should reject Contestants' incorrect construction of TOMA.........................................................................................7

             1.     Contestants' interpretation of "subject" goes beyond the term's plain meaning. ...................................8

             2.     Contestants' sliding-scale standard has no basis in the Supreme Court's TOMA jurisprudence. .................10

             3.     Adopting Contestants' sliding-scale standard would increase uncertainty and litigation risk for public entities....................................................................19

             4.     Contestants' requested relief is an extreme and unprecedented weaponization of TOMA's notice requirement. ...............................................................23

         B.     Contestants failed to plead or prove the elements of an election contest.......................................................................26

    IV.   Conclusion.........................................................................................30

CERTIFICATES OF COMPLIANCE AND SERVICE .......................................32

# TABLE OF AUTHORITIES

**Cases**

*Bahn v. Savage*, 120 S.W.2d 644, 646 (Tex. App.—San Antonio 1938), writ refused, 122 S.W.2d 191 (1938)..................................23

*Barrington v. Cokinos*, 338 S.W.2d 133, 143 (Tex. 1960)....................................22

*Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999)..................................27

*Burks v. Yarbrough*, 157 S.W.3d 876, 883 (Tex. App.—Houston [14th Dist.] 2005, no pet.)....................................10

*City of Donna v. Ramirez*, 548 S.W.3d 26, 35 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied)..................................13

*City of Kingsville v. Int'l Ass''n of Firefighters, Local Union No. 2390*, 568 S.W.2d 397, 401 (Tex. App.—Corpus Christi 1978, no writ)..................................27

*City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991) ...................................10

*City of San Antonio v. Tenorio*, 543 S.W.3d 772, 780 (Tex. 2018) ..................................19

*Cohen v. Clear Lake City Water Auth.*, 687 S.W.2d 406 (Tex. App.—Houston [14th Dist.] 1985, no writ) ...............................26

*Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 439 (Tex. 1998) ..................................19, 20

*Cox Enters., Inc. v. Bd. of Trustees*, 706 S.W.2d 956, 958 (Tex. 1986) ..................................10, 11, 13

*Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist.*, 784 S.W.2d 79, 86 (Tex. App.—Austin 1989, writ denied)..................................13

*Dacus v. Parker*, 466 S.W.3d 820, 825–26 (Tex. 2015) ........................................4

*Draughon v. Johnson*, 631 S.W.3d 81, 87–88 (Tex. 2021)...........................28, 29

*Flores v. Cuellar*, 269 S.W.3d 657, 660 (Tex. App.—San Antonio 2008, no pet.)..................................29

*Greater Beauxart Garden Municpal Utility District v. Cormier*,
596 S.W.2d 597, 599 (Tex. App.—Beaumont 1980, no
writ)............................................................................................25

*Guerra v. Rios*, No. 13-24-00579-CV, 2025 WL 945566, *6
(Tex. App.—Corpus Christi–Edinburg Mar. 28, 2025,
pet. filed)....................................................................................24

*Hays County v. Water Planning P'ship*, 69 S.W.3d 253, 257–58
(Tex. App.—Austin 2002, no pet.).............................................17

*Hotze v. White*, 01-08-00016-CV, 2010 WL 1493115, at *4
(Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet.
denied) ........................................................................................27

*In re Elliott*, 504 S.W.3d 455, 464 (Tex. App.—Austin 2016,
orig. proceeding).........................................................................8

*Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936) ..........................4, 21

*Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d
641, 646 (Tex. 1975) .............................................................10, 14

*Markowski v. City of Marlin*, 940 S.W.2d 720 (Tex. App.—
Waco 1997, no writ) ..............................................................13, 14

*McCurry v. Lewis*, 259 S.W.3d 369, 372–73 (Tex. App.—
Amarillo 2008, no pet.)................................................................28

*Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180
(Tex. App.—Corpus Christi 1990, writ denied)......................13, 15

*Rossano v. Townsend*, 9 S.W.3d 357 (Tex. App.—Houston
[14th Dist.] 1999, no pet.)............................................................26

*Sawyer v. Bd. of Regents of Claredon Junior Coll.*, 393 S.W.2d
391, 399 (Tex. App.—Amarillo 1965, no writ) ...........................29

*Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) .............................9

*Sorrell v. Estate of Carlton*, 504 S.W.3d 379, 383 (Tex. App.—
Houston [14th Dist.] 2016), aff'd, 593 S.W.3d 167 (Tex.
2019) ..........................................................................................12

*Stelzer v. Huddleston*, 526 S.W.2d 710 (Tex. App.—Tyler
1975, writ dism'd) ...................................................................23, 24

*Tatum v. Collier*, No. C14-87-00870-CV, 1989 WL 111365
(Tex. App.—Houston [14th Dist.] Sept. 28, 1989, no
writ) ................................................................................................26

*Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d
670, 675 (Tex. App.—Dallas 2002, pet. denied) ..........................21

*Texas Turnpike Authority v. City of Fort Worth*, 554 S.W.2d
675 (Tex. 1977) .........................................................................14, 16

*Webb Cnty. v. Mares*, No. 14-23-00617-CV, 2024 WL 5130862
(Tex. App.—Houston [14th Dist.] Dec. 17, 2024, no pet.)............11

*Worsdale v. City of Killeen*, 578 S.W.3d 57, 75 (Tex. 2019)................19

**Statutes**

1 TEX. ADMIN. CODE § 53.14 .................................................................6

1 TEX. ADMIN. CODE § 53.9 ...................................................................6

TEX. EDUC. CODE § 45.001 ....................................................................5

TEX. EDUC. CODE § 45.003(g) ..............................................................22

TEX. ELEC. CODE § 1.005(12) .................................................................4

TEX. ELEC. CODE § 1.005(15) .................................................................4

TEX. ELEC. CODE § 233.003 ..................................................................27

TEX. ELEC. CODE § 233.006(b). .............................................................5

TEX. ELEC. CODE § 3.004 .......................................................................3

TEX. ELEC. CODE § 3.009 ...............................................................4, 9, 22

TEX. ELEC. CODE § 4.001 et seq............................................................26

TEX. ELEC. CODE § 4.003 .......................................................................5

TEX. ELEC. CODE § 4.004 .......................................................................5

TEX. ELEC. CODE § 4.009 .......................................................................5

TEX. ELEC. CODE § 41.001 ......................................................................3

TEX. ELEC. CODE § 45.003 ......................................................................3

TEX. ELEC. CODE § 52.072(a)................................................................4

TEX. ELEC. CODE § 85.004................................................................22

TEX. ELEC. CODE § 85.007................................................................22

TEX. ELEC. CODE §§ 3.006................................................................22

TEX. ELEC. CODE §§ 4.002.................................................................5

TEX. ELEC. CODE § 67.002.................................................................5

TEX. GOV'T CODE § 1202.003(a) ........................................................6

TEX. GOV'T CODE § 1202.006..............................................................6

TEX. GOV'T CODE § 1205.021..............................................................6

TEX. GOV'T CODE § 1251.001..............................................................3

TEX. GOV'T CODE § 1251.003.................................................3, 9, 21, 22

TEX. GOV'T CODE § 1251.052..............................................................5

TEX. GOV'T CODE § 1301.001.............................................................28

TEX. GOV'T CODE § 1471.011.............................................................28

TEX. GOV'T CODE § 233.006(b). .........................................................6

TEX. GOV'T CODE § 312.002(a) ..........................................................8

TEX. GOV'T CODE § 551.041.........................................................7, 20

TEX. GOV'T CODE § 551.043.............................................................21

TEX. GOV'T CODE § 551.141...................................................26, 28, 30

## Other Authorities

*Comparison*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/comparison (last viewed October 30, 2025) ................................................................12

*Subject*, BLACK'S LAW DICTIONARY (12th ed. 2024) ..............................8

Texas Education Agency, *Enrollment in Texas Public Schools 2023-24* ................................................................1

## I.      Identity and Statement of Interest of Amicus

The Texas Association of School Boards Legal Assistance Fund ("TASB LAF") advocates for the interests of Texas public school districts in legal proceedings that impact public education issues. Founded in 1980, TASB LAF's membership includes approximately 750 school districts and is governed by a board of trustees comprised of school board members, administrators, and school attorneys. Pursuant to Rule 11 of the Texas Rules of Civil Procedure, TASB LAF has retained the undersigned attorneys to prepare this brief.

TASB LAF is interested in this case because school districts routinely draft meeting agendas under the provisions of the Texas Open Meetings Act ("TOMA"), including meetings to order bond elections. Voter-authorized general obligation bonds, backed by ad valorem property taxes, are the primary method for Texas school districts to fund major capital improvements, such as the construction of new campuses, the renovation of aging facilities, and the modernization of technology infrastructure and campus security systems. As enrollment in Texas public schools has increased,[1] bond elections have become more common and consequential. According to data from the Bond Review Board, 159 bonds were proposed by Texas

---

[1] According to data from the Texas Education Agency, enrollment has increased 7.4 percent between the 2013-14 and 2023-24 school years. Texas Education Agency, *Enrollment in Texas Public Schools 2023-24*, https://tea.texas.gov/reports-and-data/school-performance/accountability-research/enroll-2023-24.pdf (last visited October 29, 2025).

1

school districts in May 2025 alone. Most of those elections were ordered with agenda language like that used by Hays County. The trial court's erroneous judgment jeopardizes those elections.

For school districts, the trial court's judgment is problematic for two reasons. First, Contestants'[2] lawsuit is premised on an incorrect and subjective TOMA standard. If the specificity of a notice is dictated by the level of public interest or controversy in a topic, how can a school district reliably determine how to comply with TOMA? Compliance should not depend on a school district exhausting its statutory discretion and pre-committing to certain bond details before publicly debating matters of import that will inform the contents of the adopted election order.

Second, Contestants were able to obtain a judgment overturning a democratic election without alleging or proving the necessary elements of an election contest. School districts have an interest in maintaining the integrity of special elections in this State, particularly bond elections. For these reasons, TASB LAF files this brief in support of Hays County, Texas and the members of its governing body (collectively, "the County").

---

[2] The term "Contestants" refers to the Plaintiffs and Appellees, Leslie Carnes, Jim Camp, Cathy Ramsey, and Gabrielle Moore.

## II. How Bonds Issue

### A. An election order seeks permission from the electorate to incur debt.

Bonds backed by ad valorem property taxes may not be issued without first obtaining voter approval. TEX. GOV'T CODE § 1251.001; TEX. ELEC. CODE § 45.003. Generally, the governing body of a political subdivision is the entity authorized to order a bond election. TEX. ELEC. CODE § 3.004. Bond elections may only be held on one of two uniform election dates, and public entities typically only adopt one bond election order per election cycle based on the uniform dates. *See* TEX. ELEC. CODE § 41.001; TEX. GOV'T CODE § 1251.003.

Before a governing body can order a bond election, it must provide notice of that action. TEX. GOV. CODE § 551.043. School districts, like many other public entities across the State, use broad agenda language for meetings to adopt a bond election order, such as "consideration and possible approval of an order calling a bond election." The purpose of the election and the bond amount will be publicly debated at the meeting. Many school districts do not even include bond amounts in their draft election orders appended to the meeting agendas because they do not want to create an appearance that their boards have already decided these issues behind closed doors without public input.

The order authorizing and "calling" the election, referred to as the "bond election order," must contain a measure and proposition. The bond "measure" is the

3

"question or proposal submitted in an election for an expression of the voters will."

TEX. ELEC. CODE § 1.005(12). The bond "proposition" is "the wording appearing on a ballot to identify a measure" and is a summary of the measure's "chief features." *Id.* § 1.005(15); *Dacus v. Parker*, 466 S.W.3d 820, 825–26 (Tex. 2015). The authority ordering a bond election has the discretion to choose the wording of its proposition and measure. TEX. ELEC. CODE § 52.072(a). Thereafter, the entity is limited by its "contract with the voters" to use bond funds for the purposes established in the order, measure, and proposition. *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936).

Bond election orders also state: (1) the purpose for which the bonds are authorized; (2) the principal amount of the bonds; (3) that taxes sufficient to pay the principal of and interest on the bonds may be imposed; (4) a statement of the estimated tax rate or maximum interest rate; (5) the maximum maturity date of the bonds; (6) the aggregate amount of the outstanding debt principal; (7) the aggregate amount of the outstanding debt interest; and (8) the ad valorem debt service tax rate. TEX. ELEC. CODE § 3.009. Many bond election orders contain amendment provisions that allow the order to include these details after the call meeting where decisions are made about measures/propositions and final principal amounts.

4

B.    Notice of the meeting to order an election is not notice of the election.

Once a bond election is ordered, the entity must then comply with statutory notice provisions about the election that are separate and distinct from the obligations of TOMA regarding the meeting to call the election. TEX. ELEC. CODE §§ 4.002 (stating authority ordering election responsible for giving notice), 4.003 (requiring notice be published in newspaper and posted in public places), 4.004 (requiring that notice contain information about nature and date of election, polling places, website listings, etc.), 4.009 (requiring internet notice); TEX. GOV'T CODE § 1251.052 (requiring voter information document to be posted in same manner as notice). Entities spend months educating voters on the facts of the election.

When an election has concluded, the local entity conducting the election must canvass the result. *Id.* § 67.002. When the election is canvassed, the 30-day election contest period begins to run. *Id.* § 233.006(b).

C.    A bond order authorizes the debt to be incurred.

If voters authorize the sale of bonds, the governing body must adopt a "bond order" to authorize the issuance of some or all of the bonds approved by the electorate (larger authorizations typically issue in series to match the funding needs of the projects). *See, e.g.*, TEX. EDUC. CODE § 45.001. The bond order contains more detailed information about the bonds, including the principal amount, purpose, maximum maturity, and payment schedule. The agenda item for a school district's

5

meeting to adopt a bond order says something like "consideration and approval of an order authorizing the issuance of the district's unlimited tax school building bonds, series 2025 in the approximate amount of $7,000,000 for projects approved at the district's 2022 election; levying an ad valorem tax for the payment thereof; and other matters in connection therewith."

The "issuer" must then submit a record of proceedings (including financial and election documents) to the Attorney General of the State of Texas before issuing the debt described in the bond order. TEX. GOV'T CODE § 1202.003(a). If the Attorney General finds that the bonds have been "authorized to be issued in conformity with law," the Attorney General must approve the bonds and deliver necessary materials to the Comptroller for registration. *Id.* Once approved by the Attorney General and registered by the Comptroller, the bonds are considered "valid and incontestable in a court or other forum and are binding obligations for all purposes according to their terms." *Id.* § 1202.006.

The Attorney General will not approve bonds during the 30-day post-canvass contest period or while litigation is pending. TEX. GOV'T CODE § 233.006(b).; 1 TEX. ADMIN. CODE §§ 53.14, 53.9. In the face of litigation (like the election contest here), an issuer may seek court validation of its bonds through the Expedited Declaratory Judgment Act. TEX. GOV'T CODE § 1205.021.

6

Once bonds are approved by the Attorney General, the issuer and underwriter execute agreements and close on the sale of the bonds. Construction can finally begin, often many months if not years after the authorizing election. Because conditions can change during that interim, public entities typically describe their projects in general terms in their election orders, measures, and propositions.

## III. Argument and Authorities

### A. This Court should reject Contestants' incorrect construction of TOMA.

TOMA provides that "[a] governmental body shall give written notice of the date, hour, place, and *subject* of each meeting held by the governmental body." TEX. GOV'T CODE § 551.041 (emphasis added). Contestants argued—and the trial court seemingly agreed—that the County's notice language relating to the bond election order adopted at an August 13, 2024 Meeting (the "August 13 Meeting") was deficient under TOMA because it did not include certain substantive details about the County's bond. (2.CR.655–66, 3.CR.1837–38). Specifically, Contestants say that substantial compliance does not apply and a notice's specificity should increase in proportion to the public's interest or controversy in the topic. (2.CR.666, 3.CR.1839, 41); *see also* Appellees' Br. at 21–24. But Contestants' standardless sliding scale **(1)** conflicts with the plain meaning of TOMA; **(2)** is a mischaracterization of the Supreme Court of Texas' TOMA jurisprudence; **(3)**

7

would increase unpredictability and litigation for school districts and other public entities; and **(4)** would lead to an extreme and unprecedented result.

> 1. Contestants' interpretation of "subject" goes beyond the term's plain meaning.

The term "subject" is undefined within Section 551.041 of the Texas Government Code. When construing an undefined term, "[t]he plain meaning of the text is the best expression of legislative intent." *In re Elliott*, 504 S.W.3d 455, 464 (Tex. App.—Austin 2016, orig. proceeding); *see* TEX. GOV'T CODE § 312.002(a). Texas courts commonly "look first to dictionary definitions" to "determine a term's common, ordinary meaning." *Texas Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 208 (Tex. 2020). Black's Law Dictionary defines the term "subject" to mean, in relevant part, "[t]he matter of concern over which something is created; something about which thought or the constructive faculty is employed," such as the "subject of the statute." *Subject*, BLACK'S LAW DICTIONARY (12th ed. 2024).

The Legislature's choice to require TOMA notices to describe a meeting's "subject," without additional modifiers or terms, indicates that a notice may describe the subject of a meeting with some amount of generality. Because the Legislature does not provide any exceptions to the general rule or special circumstances under which the definition of "subject" would be expanded or limited, this Court should not read any such exceptions into the statute.

8

The Legislature could have required that notices of meetings to order bond elections require a heightened level of detail—but it chose not to. The Legislature certainly knows how to create special rules for orders calling bond elections. *See* TEX. ELEC. CODE § 3.009; *see also* TEX. GOV'T CODE § 1251.003. There is no textual reason for modifying the TOMA standard for bond elections, or any other special topic for that matter.

Considering only the plain meaning of the term "subject," the analysis is straightforward. The language of the County's agenda item—"[d]iscussion and possible action to approve an order calling a bond election for November 5, 2024"— contains the "subject" of the meeting because it plainly identifies the matter to be addressed—the bond election order. The subject is **not** the bonds themselves. The subject is **not** the projects that may be funded as a consequence of voters authorizing the bonds. It is the order authorizing the election. As such, requiring notice of information related to the projects and purpose of the bonds would go beyond the "subject." *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("[The] Court may not impose its own judicial meaning on a statute by adding words not contained in the statute's language."). Contestants should not be allowed to re-write TOMA.

9

2. Contestants' sliding-scale standard has no basis in the Supreme Court's TOMA jurisprudence.

Moving beyond the plain text of TOMA, the Supreme Court of Texas has "on several occasions" considered the extent of the notice required by the word "subject." *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991). Generally, a notice is sufficient if it informs the reader that "some action" will be considered with respect to a topic. *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex. 1975). When a reader is "alerted to the topic for consideration, it is not necessary to state all of the consequences which may flow from consideration of the topic." *Cox Enters., Inc. v. Bd. of Trustees*, 706 S.W.2d 956, 958 (Tex. 1986); *see also Burks v. Yarbrough*, 157 S.W.3d 876, 883 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("A notice need not provide exacting detail of all issues to be decided."). Therefore, complete specificity is not required if the relevant action is identified.

To determine whether a notice describes the "subject" of a meeting under TOMA, the Supreme Court of Texas uses a "substantial compliance" standard. *See Cox Enters., Inc.*, 706 S.W.2d at 959–60 (recognizing that substantial compliance is possible "even though the notice is not as specific as it could be"). Substantial compliance is evaluated by considering "whether the notice fairly identifies the meeting and is sufficiently descriptive to alert a reader that a particular subject will be addressed." *Webb Cnty. v. Mares*, No. 14-23-00617-CV, 2024 WL 5130862 (Tex.

10

App.—Houston [14th Dist.] Dec. 17, 2024, no pet.) (internal quotations omitted) (citing *Burks*, 157 S.W.3d at 883). The purpose is to identify the meeting's subject, not explain the consequences of the action or highlight interesting facts.

When applying the standard adopted by the Supreme Court, again, the analysis is straightforward. By stating the action to be taken—discussion and possible approval of a bond election order—the public was notified that the substance of the election order would be discussed and that "some action" may be taken. Even if the County's agenda language did not include substantive details about the bond proposition, the public had sufficient information to know that the bond election order—which authorizes the bond proposition to appear on the ballot—would be discussed at the open meeting. And, if the public was interested in learning more about the details of the bond election order, a draft was accessible through the County's online agenda during the required notice period. (2.CR.1168–75). If not outright compliance, the record establishes, at a minimum, substantial compliance with TOMA, which is the only standard applicable to a public entity. *Cox Enters., Inc.*, 706 S.W.2d at 959–60.

Nevertheless, Contestants propose a contrary, more complicated, standard. First, Contestants argue that substantial compliance should be replaced but fail to offer a credible alternative. In their Motion, Contestants completely ignored the Supreme Court's substantial compliance standard. (2.CR.665–67). Then, at trial,

11

Contestants argued that substantial compliance is the "wrong test on the adequacy of notice," (3.RR.24), insisting instead that the court merely "compar[e] the content of the notice and the action taken at the meeting." (3.RR.24, 3.CR.1839). Contestants' proposed substitution is nonsense.

Substantial compliance and comparison are not interchangeable standards. Substantial compliance is an analytical doctrine used to determine whether an action complies with a statute. *Sorrell v. Estate of Carlton*, 504 S.W.3d 379, 383 (Tex. App.—Houston [14th Dist.] 2016), aff'd, 593 S.W.3d 167 (Tex. 2019) ("Substantial compliance means one has performed the essential requirements of a statute."). Comparison is "an examination of two or more items to establish similarities and dissimilarities." *Comparison*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/comparison (last viewed October 30, 2025). In the context of TOMA, courts compare agenda language with the action taken and *then* determine whether substantial compliance is met. Without substantial compliance, the analysis is incomplete.

Second, Contestants say that the specificity of a notice's subject must increase in proportion to the public's interest in, or the controversy surrounding, that subject. (3.CR.1839); *see* Appellees' Br. 21–24. Thus, according to Contestants, the County's notice should have included more details simply because the proposed bond program involved interesting or controversial projects and amounts.

12

Contestants derive this sliding-scale standard from a line of opinions that (liberally) paraphrase the Supreme Court's opinion in *Cox Enterprises, Inc. v. Board of Trustees of Austin Independent School District*.[3] This Court should reject Contestants' invitation to adopt an overly-expansive reading of *Cox Enterprises*.

In *Cox Enterprises*, a newspaper alleged that Austin Independent School District violated the then-existing open meetings law "by posting an agenda listing only general terms such as 'personnel,' 'litigation,' and 'real estate matters.'" 706 S.W.2d at 957. The Supreme Court agreed, reasoning that notice of "personnel matters" is not the same category as "[s]election of a new school superintendent," and that discussion of "litigation" does not adequately notice discussion of "a major desegregation lawsuit which has occupied the Board's time for a number of years." *Id.* at 959. The Court concluded that "[t]he Board did not provide full and adequate

---

[3] Shortly after *Cox Enterprises* was decided, the Austin Court of Appeals cited the case for the proposition that full disclosure "requires, in view of the purposes of the statute, a *correspondence* between the likely degree of public interest in a topic and the specificity with which the topic is stated in the notice." *Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist.*, 784 S.W.2d 79, 86 (Tex. App.—Austin 1989, writ denied) (emphasis added). Soon thereafter, the Waco and Corpus Christi-Edinburg Courts of Appeals extended the relationship between specificity and public interest beyond a mere "correspondence." *See Markowski v. City of Marlin*, 940 S.W.2d 720 (Tex. App.—Waco 1997, no writ) (citing *Cox Enterprises* for the proposition that "[t]he notice must be more specific if the public has a special interest in the topic under discussion"); *Point Isabel Indep. Sch. Dist. v. Hinojosa*, 797 S.W.2d 176, 180 (Tex. App.—Corpus Christi 1990, writ denied) (citing *Cox Enterprises* and *Creedmoor Maha Water Supply Corp.* for the proposition that, "[a]s expected public interest in a particular subject increases, notice must become more specific"). By 2017, the Corpus Christi-Edinburg Court of Appeals had cited *Cox Enterprises* for the proposition that "[t]he required specificity of the notice is *directly related* to the level of public interest in the topic to be discussed and increases as the public's level of interest increases." *City of Donna v. Ramirez*, 548 S.W.3d 26, 35 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied).

13

notice, particularly where the subject slated for discussion was one of special interest to the public." *Id.*

Importantly, the Supreme Court does *not* say that notices must contain certain details or that the specificity of a given notice must increase *in proportion* to the public's interest in a meeting's subject. Instead, the Court adopts a "goldilocks" approach—a notice must be "full and adequate," but need not be "as specific as it could be" or contain a description of "all of the consequences which may necessarily flow" from the meeting's subject. *Id.* (citing *Texas Turnpike Authority v. City of Fort Worth*, 554 S.W.2d 675 (Tex. 1977) and *Lower Colo. River Auth. v. City of San Marcos*, 523 S.W.2d 641 (Tex. 1975)).

On one end of the "goldilocks" zone, if a notice is so vague and unspecific that it hides the true subject of a meeting, then the entity has not provided "full and adequate notice." For example, in *Markowski*, a firefighter named Jackie Keggins accused the City of Marlin's fire chief and fire captain of racial discrimination. 940 S.W.2d 720 at 722–23. At a city council meeting during which the council planned to discuss the chief and captain's jobs, the council provided the following notice for its executive session: "[g]rievance of Firefighter Keggins. Action if any to be taken on grievance of firefighter Keggins." *Id.* at 726. The Waco Court of Appeals reasoned that the notice was inadequate because it failed to inform the public that

14

the grievance involved the fire chief and fire captain and that charges were made against them. *Id.*

Similarly, in *Point Isabel Independent School District*, the district's board of trustees noticed an executive session to "[c]onsider and approve recommendation of Superintendent on employment of personnel for the 1988–89 school year." 797 S.W.2d at 178–179. However, the "personnel" at issue included three principals. *Id.* at 179. The Corpus Christi-Edinburg Court of Appeals reasoned that "[t]he significance to the public of the hiring decision in *Cox,* although not as great, was similar to the hiring decisions in the instant case," and ultimately concluded that the notice was insufficient. *Id.*

In both *Markowski* and *Point Isabel Independent School District*, the subject of the meeting was obscured because the public had no way of identifying *which* individuals were to be discussed. The facts of this case are distinguishable. As discussed further below, the public was not forced to guess which bond election order was at issue at the August 13 Meeting.

On the other end of the spectrum, extreme specificity is not required. For example, in *Lower Colorado River Authority*, the Supreme Court concluded that notice of a meeting to consider "the ratification of the prior action of the Board taken on October 19, 1972, in response (sic) to changes in electric power rates for electric power sold within the boundaries of the City of San Marcos, Texas" complied with

15

the open-meetings statute because it sufficiently alerted a reader "to the fact that some action would be considered with respect to charges for electric power sold in San Marcos." The Court did not require the notice to contain details of the action taken.

Likewise, in *Texas Turnpike Authority v. City of Fort Worth*, the Texas Turnpike Authority provided the following agenda language for its open meeting:

> Consider request of County of Dallas, City of Grand Prairie, Dallas Central Highway Committee, Dallas Chamber of Commerce, and Grand Prairie Chamber of Commerce to determine feasibility of a bond issue to expand and enlarge the Dallas-Fort Worth Turnpike . . . .

554 S.W.2d at 676. The City of Fort Worth argued that, "since prior resolutions of the Turnpike Authority had declared the intention of the Authority to transfer the Turnpike . . . as soon as the existing bonds were paid, it was necessary that the notice specifically state that consideration would be given" to a course of action contrary to its prior resolutions. *Id.* The Court rejected that argument, stating that "[t]here is no necessity to post copies of proposed resolutions or to state all of the consequences which may necessarily flow from the consideration of the subject stated." *Id.*

The unifying principle of *Cox Enterprises* and its progeny is that a notice must contain sufficient detail so as not to *obscure* the actual subject of the meeting. For example, when a generalized term such as "personnel" disguises discussion of a high-profile employment decision, *Cox Enterprises* applies because the public is being forced to guess: "which personnel?" If the true subject of a meeting is not

16

obscured, nothing in *Cox Enterprises* or other binding precedent would require the inclusion of additional details or consequences—regardless of the public interest or controversy surrounding the topic. Therefore, before a discussion of public interest, controversy, or additional specificity is relevant, a court should determine whether the subject of the meeting has been hidden or disguised in the first place.

Here, by overemphasizing the alleged public interest in, and controversy related to, the County's bond election, Contestants convinced the trial court to place the cart before the horse. Under the correct order of operations, the County's "subject" required no additional details because the agenda language did not disguise or obscure some other item or purpose. That which was required to be identified— the singular election order—was identified. And, unlike in *Markowski* or *Cox Enterprises*, the County did not discuss some *other* election order or use the discussion as a pretext to shoehorn other actions unrelated to that election order.

If the public was already notified as to which election order would be discussed, then what TOMA purpose would have been served by including additional details? *See Hays County v. Water Planning P'ship*, 69 S.W.3d 253, 257–58 (Tex. App.—Austin 2002, no pet.) (stating that the purpose of TOMA is "to safeguard the public's interest in knowing the workings of its governmental bodies"). In Contestants' motion briefing, they say that the County should have included the following additional details in its agenda language:

> Discussion and possible action to approve an order calling a **road** bond election **for the total amount of $439,634,000 to be repaid by a property tax increase for 31 road projects** for November 5, 2024 to be held within Hays County, Texas; designating voter polling places; providing for early voting and election day voting; providing for performance of required administrative duties; providing for conduct of the election and for the conduct of a joint election with various political subdivisions; and providing for other matters related to such election. [3]

(3.CR.1840). Such details could have, hypothetically, helped a reader form an opinion about *how to vote* in the election. But the purpose of TOMA is not to provide voters with notice of election information—various provisions in the Election Code and Government Code already serve that purpose. *See supra* Section II.

Regardless, there is no allegation that this relevant information was not available to voters. It is undisputed that the County's online agenda included a draft order containing the information that Contestants suggest should have been in the Notice. (2.RR.86-87; 4.RR.P.Ex-3b). The County correctly points out that its online agenda, containing the draft election order, should be considered in the TOMA analysis.[4] App. Br. at 43–49.

---

[4] Contestants attempt to downplay the existence of the County's online draft order by complaining that "the reader would have read 552 words before realizing that that agenda item was about road projects with a huge price tax (sic) and tax increase." Appellees' Br. at 26. But the amount and purpose of the bonds appear on pages 1 and 2 of the draft order, respectively. (2.CR.1168–69). That is hardly hidden.

Applying the Supreme Court's established TOMA analysis, the County's notice sufficiently identified the "subject" of the August 13 Meeting. There was no confusion about which election order would be discussed. The public was given notice that action may be taken to adopt the election order. And, though the substantive features of the bond proposal may have been relevant to inform the public about the election itself, such details were not necessary to sufficiently identify the County's official action—the order of an election. The Court should reverse the trial court's judgment.

3. Adopting Contestants' sliding-scale standard would increase uncertainty and litigation risk for public entities.

Predictability is an important interest to be advanced, especially in the context of statutory construction. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 75 (Tex. 2019); *see City of San Antonio v. Tenorio*, 543 S.W.3d 772, 780 (Tex. 2018) ("Adhering to precedent fosters efficiency, fairness, and legitimacy. More practically it results in predictability in the law, which allows people to rationally order their conduct and affairs.") Statutory terms should be construed to avoid "unpredictability and standardlessness." *See Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 439 (Tex. 1998).

The Court should reject Contestants' theory that substantial compliance does not apply and that the scope of "subject" changes based on public interest or controversy because adopting such a rule would turn compliance with TOMA into a

19

guessing game. If the specificity of a notice is dictated by the level of public interest or controversy in a topic, then whether a notice sufficiently states the "subject" of a meeting would be "guided by officials' personal views rather than any consistent standard." *See id.* at 439. What level of public interest or controversy triggers heightened specificity? Who gets to decide? And, once an entity determines that it must provide additional details in its notice, how would that entity choose which details to include?

These questions would be difficult to answer, especially when noticing a meeting to adopt a bond election order. On one hand, if a school district chooses not to include bond details in its notice, it risks a lawsuit like the one here. On the other, if the district chooses to include bond details in its notice, it risks limiting its board's discretion to deliberate or amend the content of its bond election order at the time that state law requires such deliberation to occur.

Had the County posted Contestant's version of the notice, the Commissioners Court presumably could not have discussed alternative bond amounts, projects, or purposes without risking a separate TOMA violation. *See* TEX. GOV'T CODE § 551.041. In that sense, Contestants' construction of TOMA could create a one-way ratchet, where public entities are pressured to create increasingly specific notices at the expense of their ability to deviate from a pre-determined action. For cities and counties, that ratchet is particularly problematic because they, unlike school districts,

20

only have a two-week window in which to order a bond election. TEX. ELEC. CODE § 3.005(c) (ordering no later than 78 days before election day); TEX. GOV'T CODE §§ 1251.003(c) (holding bond election no more than 90 days from order); 551.043 (requiring three business days' notice of the meeting to call election).

If TOMA requires the substantive details of bond election order to be decided three days before a meeting to order the election, all a governing body can do at the meeting is call an up-or-down vote. Though Contestants' construction of TOMA is premised on increasing public access to information, it may have the ironic effect of reducing public participation in determining the substance of a bond proposition. What purpose would public comment serve if the details are set before the meeting begins?

Further, adopting Contestants' interpretation of TOMA could also increase the risk of a "contract with the voters" challenge once projects are funded and undertaken. Voter-approved bond proceeds "must be expended for the purposes for which they were voted." *Lewis*, 89 S.W.2d at 978. This "contract with the voters" is created when a governing body adopts a measure and corresponding ballot proposition. *Taxpayers for Sensible Priorities v. City of Dallas*, 79 S.W.3d 670, 675 (Tex. App.—Dallas 2002, pet. denied). However, a governing body may reserve discretion to make future decisions about bond projects described in that measure do

21

not include "definite plans or commitments" or where the plans contemplated are "necessarily prospective." *Barrington v. Cokinos*, 338 S.W.2d 133, 143 (Tex. 1960).

Contestants argue that the "subject" of the County's August 13 Meeting should have included the total number of projects in the County's bond. However, the Contestants' standard for the content of a TOMA notice would exceed that which is required to be included in bond election orders, measures, or propositions. Texas law does not require bond election orders, measures, or proposition to detail projects or provide a total number of projects. *See* TEX. ELEC. CODE §§ 3.006, 3.009, 85.004, 85.007; TEX. GOV'T CODE § 1251.003. Although, in this particular case, the County went above and beyond to list bond projects in its election order, (2.CR.1169–70), entities need not include such a list.

For example, school districts commonly adopt single bond propositions for the purpose of funding the construction, acquisition, or improvement of "school buildings," along with student transportation and land. *See* TEX. EDUC. CODE § 45.003(g). Under what is commonly referred to as a "school facilities" or "general-purpose" bond proposition, a school district reserves discretion to use bond funds on capital improvements to district facilities used for educational instruction. The individual projects can be determined long after the authorizing election. If Contestants' position is correct, TOMA would diminish that statutory authority and

22

force school districts to fix the scope of a school facilities proposition before an election order is adopted. That simply cannot be the case.

Ultimately, Contestants' sliding-scale test does not encourage better compliance with TOMA. It merely provides additional avenues for disgruntled taxpayers to challenge legitimate actions taken during open meetings.

        4.        Contestants' requested relief is an extreme and unprecedented weaponization of TOMA's notice requirement.

The voiding of an election is an extreme action that should only occur when specific legal conditions are met. *See Bahn v. Savage*, 120 S.W.2d 644, 646 (Tex. App.—San Antonio 1938), writ refused, 122 S.W.2d 191 (1938) ("[T]he courts are not authorized to lightly break down the barriers plainly erected by the legislature against nullification of the will of the people when voiced at the polls."). Texas courts have, on rare occasions, considered whether insufficient notice of a meeting to call an election is enough to void the election. However, contrary to Contestants' suggestion, those courts have never affirmed such a remedy.

For example, in *Stelzer v. Huddleston*, the Tyler Court of Appeals considered whether a notice for a meeting to call a bond election was sufficient under the then-applicable open meeting law. 526 S.W.2d 710 (Tex. App.—Tyler 1975, writ dism'd). Contestants argued that, because the notice was not posted on the school bulletin board for "a full 72 hours before the day of the meeting" and failed to

23

identify the correct building in which the meeting would be held, the bond election was void or voidable. *Id.* at 711.

On the timing issue, the court found substantial compliance, reasoning that partial compliance with the total posting time was sufficient because the public had received notice from other media (news media) and "[t]here is nothing to suggest that the failure to post the notice on the school bulletin board for the required time arose from any willful or fraudulent conduct on the part of the School Board." *Id.* at 713.

On the location issue, the court again found substantial compliance because the school district only had two buildings that could have housed the meeting and "[t]here is no complaint that anyone was denied admittance to the meeting or was misled by the notice of the meeting place." *Id.* The court refused to void the election based on a TOMA violation.

Next, in *Guerra v. Rios*, the Corpus Christi-Edinburg Court of Appeals considered, in part, whether the following agenda language was sufficient notice for a meeting to adopt a charter amendment election: "[c]onsideration and possible action to approve Order Number 2024-0806-001, for the City of San Benito November 5, 2024, Charter Amendment Special Election." No. 13-24-00579-CV, 2025 WL 945566, *6 (Tex. App.—Corpus Christi–Edinburg Mar. 28, 2025, pet. filed). The court did not void the election, concluding that "[a]ny readers interested

in amendments to the City Charter had more than sufficient notice that the City Commission would be considering action relating to it by way of a special election." *Id.* The court refused to void the election based on a TOMA violation.

Finally, in *Greater Beauxart Garden Municpal Utility District v. Cormier*, the Beaumont Court of Appeals considered whether a utility district's confirmation election was void due to numerous defects in the election process, including defects in the notice for the meeting to call the election. 596 S.W.2d 597, 599 (Tex. App.—Beaumont 1980, no writ). Although the court ultimately affirmed the trial court's decision to void the election, the insufficient meeting notice was merely one of several grounds for the decision. *See id.* at 601. For example, not only did the district not comply with the then-existing open meetings law, but "[t]here was no election order adopted by the board of directors," which was sufficient standing alone to void the special election. *Id.*

The above cases represent the few available instances in which an appellate court has considered whether a notice defect for a meeting to order an election can be a basis for overturning the election. Only one case, *Cormier*, resulted in a void election. But, in that case, the open-meetings violation was one of several procedural defects—including a lack of an order calling an election (a clearly distinguishable

fact compared to the instant case). Thus, it cannot be said that lack of notice—by itself—justified the voiding of that election.[5]

If this Court affirms the trial court's judgment and concludes that the County's bond election is void based solely on the sufficiency of notice for the meeting to call the election, the resulting opinion would be the first of its kind and prove extremely harmful to the many school districts which conducted recent bond elections using agenda language similar to that of the County's.

B.    Contestants failed to plead or prove the elements of an election contest.

Although school districts across the State would benefit from an opinion rejecting Contestants' construction of TOMA, this Court could dispose of this appeal for a more obvious reason: Contestants ignored the second element of their election contest cause of action, that the alleged illegality materially affected the outcome of the election.

---

[5] In their appellate brief, Contestants cite three additional cases that they claim support invalidating an election based on a TOMA violation. *See Rossano v. Townsend*, 9 S.W.3d 357 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Tatum v. Collier*, No. C14-87-00870-CV, 1989 WL 111365 (Tex. App.—Houston [14th Dist.] Sept. 28, 1989, no writ); *Cohen v. Clear Lake City Water Auth.*, 687 S.W.2d 406 (Tex. App.—Houston [14th Dist.] 1985, no writ). But none of the cases relate to TOMA. For example, both *Cohen* and *Rossano* are election contests involving *election notices*, not TOMA notices. *See* TEX. ELEC. CODE § 4.001 et seq. Therefore, they say nothing about whether a pre-order TOMA violation can justify an election contest. And *Tatum*, which does not even involve a notice, is also irrelevant because it relates to a void election based on a deficient disincorporation petition. 1989 WL 111365, at *5. A TOMA violation results in a voidable, not void, action. TEX. GOV'T CODE § 551.141.

26

"An election contest is a special proceeding created by the Legislature to provide a remedy for elections tainted by fraud, illegality or other irregularity." *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999). Section 233.003 of the Texas Election Code sets the scope of an election contest, providing, in relevant part, that:

> The tribunal hearing an election contest shall attempt to ascertain **whether the outcome of the contested election, as shown by the final canvass, is not the true outcome** because . . . an election officer or other person officially involved in the administration of the election . . . engaged in other fraud or illegal conduct or made a mistake.

TEX. ELEC. CODE § 233.003 (emphasis added). Thus, a contestant is required *by statute* to show that the outcome should have been different.

When a contestant "challenge[s] the process by which" an entity presents "propositions to the electorate as illegal or invalid," the "only statutory mechanism to bring such challenges is a timely filed election contest." *Hotze v. White*, 01-08-00016-CV, 2010 WL 1493115, at *4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. denied). Some Texas courts have recognized, however, that a declaratory judgment action can challenge the validity of an election if the public entity's statutory authority to hold the election is at issue. *See, e.g.*, *City of Kingsville v. Int'l Ass'n of Firefighters, Local Union No. 2390*, 568 S.W.2d 397, 401 (Tex. App.—Corpus Christi 1978, no writ).

Contestants did not allege a collateral attack on the County's bond election. Nor could they because the County was clearly authorized to order the bond election.

TEX. GOV'T CODE §§ 1301.001, 1471.011. Furthermore, Contestants could not have used a declaratory judgment action to attack the County's election as void because an alleged TOMA violation merely renders an action voidable. *See* TEX. GOV'T CODE § 551.141; *City of Granite Shoals*, 280 S.W.3d at 560 ("The distinction between [void and voidable] depends on whether the municipal act is unauthorized by law or color of law or, on the other hand, is a mere irregular exercise of power.") (internal quotations omitted).

Instead, Contestants alleged, and the trial court granted summary judgment on, an election contest. Thus, Contestants could have only obtained their requested relief—voiding the County's bond election—by establishing all elements of an election contest. *See Draughon v. Johnson*, 631 S.W.3d 81, 87-88 (Tex. 2021) (stating that traditional summary judgment requires movant to first prove "all essential elements of his cause of action"). Contestants should not be allowed to avoid the consequences of their own litigation strategy.

An election contest requires more than merely proving illegality in the election process. To succeed in an election contest, "the contestant must prove by *__clear and convincing__* evidence" that a statutory violation occurred "*__and__* it materially affected the outcome of the election." *McCurry v. Lewis*, 259 S.W.3d 369, 372–73 (Tex. App.—Amarillo 2008, no pet.) (emphasis added). To establish that the outcome was materially affected, "the contestant must show that illegal votes were

28

counted or an election official prevented eligible voters from voting, failed to count legal votes or engaged in other fraud, illegal conduct, or mistake." *Flores v. Cuellar*, 269 S.W.3d 657, 660 (Tex. App.—San Antonio 2008, no pet.). If a contestant presents no evidence of an incorrect outcome, it cannot prevail.

Even where a contestant can show election irregularities, courts do not automatically presume or imply an impact—let alone material impact—on the election outcome. *See Sawyer v. Bd. of Regents of Claredon Junior Coll.*, 393 S.W.2d 391, 399 (Tex. App.—Amarillo 1965, no writ) (stating that, where there "was no evidence these disqualified persons attempted to exercise any influence on any voter, or that there was any unfairness or fraud in the conduct of the election," the "irregularities are not sufficient to void an election"). The bar is set high.

Assuming arguendo that TOMA claims arising solely from actions taken before the ordering of an election are properly raised through an election contest, evidence of a TOMA violation could only support Contestants' first element—the alleged illegality. Contestants were also required to both allege and establish the second element—the material effect on the election. *See Draughon*, 631 S.W.3d at 87–88. Contestants did neither. *See, e.g.*, (2.CR.771–75) (focusing claims on TOMA); (2.CR.670) (same).

Ultimately, Contestants' silence on the second element of their election contest is unsurprising. How can a notice defect occurring before an election is

ordered cause unfairness in a resulting election? No voter was prohibited from voting. No voter lacked notice of the election. No voter was misled as to the contents of the ballot. There is no suggestion that illegal votes were cast.

Even in their appellate brief, Contestants cannot identify evidence of a material impact. Instead, they claim that it would be "nonsensical" if an illegal election order "cannot invalidate an election" on its own. Appellees' Br. at 16. But that is only possible in a collateral attack on a *void* order or election. Here, Contestants cannot argue that the voidness of the election itself materially affected the outcome of the election because the County's action was valid until the trial court issued its judgment. *See* TEX. GOV'T CODE § 551.141; *City of Granite Shoals*, 280 S.W.3d at 560. The election order was voidable, not void from inception, and Contestants were never relieved of their duty to prove the second element of their cause of action.

## IV. Conclusion

Amicus Curiae TASB LAF respectfully requests that the Court reverse the trial court's judgment and grant the County's requested relief.

Respectfully submitted,

By: */s/ Matthew Hines*

McCall Parkhurst & Horton L.L.P.
Matthew Hines
State Bar No. 24120892
600 Congress Ave., Suite 2150
Austin, Texas 78701
mhines@mphlegal.com
Rosemarie Kanusky
State Bar No. 00790999
112 E. Pecan St., Suite 1310
San Antonio, Texas 78205
rkanusky@mphlegal.com

Attorneys for Amicus Curiae the
Texas Association of School
Boards Legal Assistance Fund

31

## CERTIFICATES OF COMPLIANCE AND SERVICE

In compliance with Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that this brief was computer generated using Microsoft Word and that the number of words in this brief, including its headings, footnotes and quotations, is 8,469.

The undersigned counsel hereby certifies that a copy of this brief was served by electronic filing in compliance with Texas Rule of Appellate Procedure 9.5 on November 3, 2025, upon all counsel of record.

/s/ *Matthew Hines*
Matthew Hines

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Matthew Hines on behalf of Matthew Hines
Bar No. 24120892
mhines@mphlegal.com
Envelope ID: 107605041
Filing Code Description: Other Brief
Filing Description: 2025113  TASB LAF Amicus Brief
Status as of 11/3/2025 3:56 PM CST

Associated Case Party: HAYS COUNTY

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Ian M.Davis | | idavis@mcginnislaw.com | 11/3/2025 3:47:10 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
| --- | --- | --- | --- | --- |
| Raymond Abarca | | Raymond.Abarca@oag.texas.gov | 11/3/2025 3:47:10 PM | SENT |
| Michael  Shaunessy | | mshaunessy@mcginnislaw.com | 11/3/2025 3:47:10 PM | SENT |
| Julie Denny | | jdenny@mcginnislaw.com | 11/3/2025 3:47:10 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 11/3/2025 3:47:10 PM | SENT |
| Austin Jones | | ajones@mcginnislaw.com | 11/3/2025 3:47:10 PM | SENT |
| Bill Aleshire | | bill@aleshirelaw.com | 11/3/2025 3:47:10 PM | SENT |
| Bill Bunch | | bill@sosalliance.org | 11/3/2025 3:47:10 PM | SENT |
| Bobby Levinski | | bobby@sosalliance.org | 11/3/2025 3:47:10 PM | SENT |
| William Gammon | | firm@gammonlawoffice.com | 11/3/2025 3:47:10 PM | SENT |
| Lynn Saarinen | | lynn.saarinen@oag.texas.gov | 11/3/2025 3:47:10 PM | SENT |
| Matthew PhilipHines | | mhines@mphlegal.com | 11/3/2025 3:47:10 PM | SENT |
| Rosemarie Kanusky | | rkanusky@mphlegal.com | 11/3/2025 3:47:10 PM | SENT |