**GREATER BEAUXART GARDEN MUNICIPAL UTILITY DISTRICT et al., Appellants,**

v.

**John CORMIER et al., Appellees.**

No. 8380.

Court of Civil Appeals of Texas, Beaumont.

Feb. 14, 1980.

W. Everett Sanderson, Nederland, for appellants.

Ernest L. Sample, Beaumont, for appellees.

KEITH, Justice.

This is an election contest wherein the appellees, as contestants, challenged the confirmatory election held in the Greater Beauxart Gardens Municipal Utility District (hereinafter simply "district"). The trial court found the election void and the district and its officers have appealed.

District was created pursuant to the provisions of Chapter 54, *Sections 54.001, et seq., Tex.Water Code Ann. (1972),* and as amended *(Supp.1980).*[1] No complaint has been made as to the legality of the original creation of the district by order of the Texas Water Rights Commission, acting under *§ 54.021(c),* and the appointment of the temporary directors as provided in *§ 54.022.* Consequently, we will assume the legality of the creation of the district.

### Statement

The contestants are resident taxpaying citizens of the district and they timely

---

1. All statutory references are to the *Water Code* unless otherwise noted. All emphasis has been supplied.

brought suit in the form of an election contest challenging the validity of the election held on January 20, 1979. After a full hearing on the matter at which time all fact questions were explored in detail, the trial court entered judgment declaring the election to be void. The final conclusion of law of the trial judge is set forth in the margin.[2]

The contestees—the district and its temporary directors—insist that despite the irregularities, there has been no showing of fraud, illegal voting, the counting of illegal votes, or that the result of the election would have been different had the election been conducted in precise compliance with the statutes. Notwithstanding the arguments advanced, we affirm the judgment of the trial court.

 We quote a few of the findings of the trial court, all of which we find have ample support in the evidence if not supported by the uncontradicted evidence:

"3. The polling place was not statutorily proper under the law.

"4. The notice or agenda, under the Public Meeting Law, concerning the meeting which attempted to call the election of January 20, 1979, was not proper, nor was it timely filed and posted.

\*　\*　\*　\*　\*　\*

"6. No order, or proper resolution, calling a confirmation election, and a directors' election, for January 20, 1979, was passed.

\*　\*　\*　\*　\*　\*

"9. The temporary board of directors never had a regular meeting day, regular meeting hour, or regular place of meeting. . . .

"10. There was not furnished, or given to the election judge . . . a proper poll list of the legal and lawful taxpayers and/or voters restricted to the boundary lines of . . . [the district]."

We add to these specific findings of the trial court by noting that the undisputed evidence showed:

1. The poll list of County Voting Precinct No. 35 was used by the officials; but, the boundaries of the election precinct did not coincide with those of the district. Indeed, the area of the election precinct contained many overlapping municipal entities.

2. The election judge had no map of the district and was, herself, mistaken as to the boundaries thereof.

3. The so-called "election orders" mentioned hereafter did not identify the boundaries of the district.

4. The voting at the election, although a Precinct 35 list was used, was held in Election Precinct 80 located outside of the district.

The election was a requirement of a statute, § 54.026,[3] which specifically provided that the election be held "within the boundaries of the proposed district." The governing body of every municipality is required to designate election precincts [*Tex.Election Code Ann. art. 2.05 (1967)*], and all voters "shall vote in the election precinct in which they reside." *Tex.Election Code Ann. art. 2.06 (Supp.1980)*.

*Section 54.109(a)* authorizes the board of directors to "establish regular meetings" which are required to be at a designated meeting place. The next section of the statute, § 54.110(a), authorizes the board to designate and establish a district office within the district and also authorizes the board to maintain an office outside the district. *Subsection (c)* thereof requires the board to give public notice of the establishment of a meeting place outside the district.

---

2. "8. Because of all of the findings of fact made above, in their cumulative, overall, effect and result, necessarily dictates the legal consequence of totally vitiating the confirmation election and the attempted election for permanent directors and causes the said attempted election of January 20, 1979, in its entirety, to be totally null and void and a total legal nullity ab initio."

3. The statute reads: "Before issuing any bonds or other obligations an election *shall* be held within the boundaries of the proposed district to determine if the proposed district shall be established and to elect five permanent directors."

The provisions of the Open Meeting Law, *Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Supp. 1980)* is made applicable to such districts under the provisions of *§ 54.109, subsections (b) and (d).*[4]

Counsel for the district represents in his brief:

> "The order calling for the election to confirm the district and to elect five permanent directors was properly passed by the board of directors at the October 3, 1978, meeting as evidenced by the statement of facts at pg 19 and Exhibit P–6."

The record, unfortunately, does not support the contention advanced by counsel. Emmett Darnell, President of the Board of Directors, testified that he had no election order, as such, but that on October 3, 1978, the board was "using minutes"; and, when asked if there was separate instrument constituting an election order, testified, "The minutes is all we have."

The minutes of October 3, reflect that there was a motion made and adopted that an election be held on January 20, 1979. The remainder of the minutes relating to the election is set out in the margin.[5]

District counsel also suggests that action taken by the district board on January 2, 1979, relating to the election should be considered in connection with the election order question. We do not find the material in these minutes to be helpful.[6] We note, in passing, that the place of the election was not fixed in either the October or January

board meetings. Contestants call our attention to the fact that both meetings were held outside the district.

### Opinion

■ In this non-jury trial, the findings of fact have the same force and dignity as does a jury verdict based on special issues; and, we have noted that there was competent evidence to support such findings. Thus, the findings are binding upon us unless they are so against the overwhelming weight of the evidence as clearly and manifestly to be wrong. *4 R. McDonald, Texas Civil Practice § 16.05, at 11 (1971 Rev. Vol.).* See also *Gandy v. Culpepper,* 528 S.W.2d 333, 335 (Tex.Civ.App.—Beaumont 1975, no writ).

■ In two instances, *§§ 54.026* and *54.-110(a),* the legislature used the word "shall" in prescribing the duties of the board of directors. The requirement for the designation of a meeting place was to enable the citizens of the district to attend meetings of the board if they so desired. The requirement that elections be held within the district is conformable with the uniform practice which has prevailed for years.

Having ascertained the plain purpose of these two statutory sections, we now hold that the legislature intended that the word "shall" be used in its mandatory sense. See generally *Chisholm v. Bewley Mills,* 155 Tex. 400, 287 S.W.2d 943, 945 (1956); *Calvert v. British-American Oil Producing Co.,*

---

**4.** Since we are unable to determine whether the "election call" was at a regular or special meeting of the board, we have no occasion to comment upon the applicability of § 54.109(c).

**5.** The second numbered paragraph of the minutes reads:

> "Take necessary action on all related business to election—
> Filing Deadline
> Poll List
> Securing Election Judges
> "Motion by Parker for Willis to make necessary arrangements for securing election officials and for Parker to post notices in newspapers and store and for Parker to secure poll lists. Willis mentioned that filing deadline and voter registration deadline is 30 days prior to election date."

**6.** The second numbered paragraph of the minutes of January 2, 1979, reads:

> "Discuss and take action on business pertaining to upcoming election, January 20, 1979.
> "Parker reported that newspaper notices will be published on January 4, and 11, 1979 in the Port Arthur News and that he will secure poll lists. Willis reported that absentee voting will be handled by Mrs. Jossie Ross, 141 N. Garden Drive, Rt. 4, Box 124–K, and election judge will be Mrs. Meadows. Mrs. Young and Mrs. McGowan will be election clerks for Saturday, January 20, 1979. Election judge and clerks agreed upon by Board —3 ayes no noes. Board gives Willis authority to see to it that ballots, boxes, poll lists, etc., be delivered to election judge—3 ayes, no noes."

397 S.W.2d 839, 842 (Tex.1965); *American Mortgage Corp. v. Samuell,* 130 Tex. 107, 108 S.W.2d 193, 198 (1937). See also *2A Sutherland Statutory Construction §§ 57.-02–57.03, at 414–416 (Sands 4th Ed. 1973).*

Our Supreme Court in *Harrison v. Jay,* 153 Tex. 460, 271 S.W.2d 388, 389 (1954), has held that *Tex.Election Code Ann. art. 2.06 (1967)* is very clear: "All voters shall vote in the election precinct in which they reside." [7]

The Court continued:

"This language needs no construction or explanation and by its very terms requires that a voter must cast his vote in the voting precinct where he resides. The decided cases have held this requirement must be obeyed if the vote is to be counted."

The rule is still viable. *Zuniga v. Almaraz,* 514 S.W.2d 331, 334 (Tex.Civ.App.—San Antonio 1974, no writ).

This was a special election in a new district which had never conducted an election during its existence. Thus, this language from *Countz v. Mitchell,* 120 Tex. 324, 38 S.W.2d 770, 773 (1931), is pertinent:

"[W]here the election is a special one, to be called and the time and place fixed by some authority, it is essential to the validity thereof that it be called or ordered by the very authority designated by law and none other."

In ordering a special election and giving notice thereof, there must be a substantial compliance with the law. *Turner v. Lewie,* 201 S.W.2d 86, 88 (Tex.Civ.App.—Fort Worth 1947, writ dism'd); *Christy v. Williams,* 292 S.W.2d 348, 350 (Tex.Civ.App.—Galveston 1956), writ dism'd w.o.j., 156 Tex. 555, 298 S.W.2d 565 (1957). There was no election order adopted by the board of directors at either the October or the January meeting mentioned earlier.

The Open Meeting Law, applicable to the district, has been held to be mandatory. *Toyah Independent School Dist. v. Pecos-Barstow Independent School Dist.,* 466 S.W.2d 377, 380 (Tex.Civ.App.—San Antonio 1971, no writ). The Supreme Court approved the holding in *Toyah,* supra. *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641, 646 (Tex.1975). As we have noted, the trial court found that district did not substantially comply with the Open Meeting Law.

There are other irregularities which have been discussed with diligence by the contestants but which we find unnecessary to consider. We have examined the record carefully and find no merit to the contentions advanced by the district. The judgment of the trial court was and is correct and is now affirmed, without prejudice to the rights, if any, of the district to hold another election conducted in conformity with law.

AFFIRMED.

---

7. The 1971 amendment to *Tex.Election Code Ann. art. 2.06 (Supp.1980)* is not applicable to the case at bar.