ACCEPTED
15-25-00121-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/13/2025 3:51 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00121-CV

IN THE FIFTEENTH COURT OF APPEALS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/13/2025 3:51:54 PM
CHRISTOPHER A. PRINE
Clerk

**Hays County, Texas, Ruben Becerra, Debbie Ingalsbe, Michelle Cohen, Morgan Hammer, and Walt Smith, in their official capacities,**
*Appellants*

**v.**

**Leslie Carnes, Jim Camp, Cathy Ramsey, and Gabrielle Moore,**
*Appellees*

Appeal from the 126th Judicial District Court
of Travis County, Texas; Cause No. D-1-GN-25-002049

## REPLY BRIEF OF APPELLANTS

| | |
|---|---|
| Michael Shaunessy | C. Robert Heath |
| State Bar No. 18134550 | State Bar No. 09347500 |
| Ian Davis | **BICKERSTAFF HEATH DELGADO** |
| State Bar No. 24120793 | **ACOSTA LLP** |
| **MCGINNIS LOCHRIDGE LLP** | 1601 S. MoPac Expressway |
| 1111 W. 6th St., Ste. 400 | Suite C400 |
| Austin, Texas 78703 | Austin, Texas 78746 |
| (512) 495-6000 | (512) 472-8021 |
| mshaunessy@mcginnislaw.com | bheath@bickerstaff.com |
| idavis@mcginnislaw.com | |

***Attorneys for Appellants***

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..............................................................................iv

STATEMENT REGARDING REFERENCES TO THE CLERK'S RECORD
AND REPORTER'S RECORD.................................................................. vii

ARGUMENT & AUTHORITIES .................................................................1

    I.    A TOMA Notice Defect—Even If One Occurred Here—Does
        Not Justify Overturning the Results of a Free and Fair
        Election.........................................................................................1

        A.    Appellees' Brief Misstates the Law of Election
            Contests.................................................................................1

        B.    TOMA Does Not Permit Enforcement of the Act through
            an Election Contest. ..............................................................4

        C.    Appellees Attempt to Expand the Scope of an Election
            Contest by Relying on *Dickson v. Strickland*; However,
            that Opinion Is Largely Irrelevant to the Issues in this
            Case. ......................................................................................7

        D.    Appellees Improperly Dismiss the Supreme Court's
            Opinion in *Scarborough v. Eubank*. .........................................9

        E.    The Cases Cited by Appellees in Support of their
            Contention that a Defective TOMA Notice Will
            Invalidate an Election Do Not Stand for that
            Proposition...........................................................................12

        F.    Appellees Entirely Ignore the Fact that Even If
            There Were a TOMA Notice Violation, the Election
            Order Would Be Voidable Rather than Void and
            Was Presumed to Be Valid at the Time of the
            Election, After Which the Issue Became Moot. .............15

    II.    The County's August 13 Notice Complied with TOMA. ........16

A.     Appellees Continue to Conflate Passing the Election Order with Authorizing the Bonds. ..........................................17

B.     The Supreme Court Has Not Endorsed Appellees' Sliding Scale of Specificity. .................................................20

C.     TOMA Notice Need Not Be Tailored to Reach Those Specific Individuals Whose Private Interests Will Be Most Affected by the Proposed Government Action.........................24

D.     The Court Can and Should Consider the Online August 13 Notice, Which Included a Draft of the Election Order.............26

III.    Limiting Each Citizen to Three Minutes of Public Comment Is Not a Violation of TOMA......................................28

CONCLUSION AND PRAYER ..........................................................32

CERTIFICATE OF COMPLIANCE.....................................................34

CERTIFICATE OF SERVICE .............................................................35

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carter v. Tomlinson,*
227 S.W.2d 795 (Tex. 1950) ........................................................... 4, 5

*In re City of Amarillo,*
2023 Tex. App. LEXIS 6252 (Tex. App.—Amarillo Aug. 16,
2023, pet. dism'd) ................................................................................ 17

*Cohen v. Clear Lake City Water Authority,*
687 S.W.2d 406 (Tex. App.—Houston [14th Dist.] 1985, no
writ) ....................................................................................................... 12

*Cox Enters., Inc. v. Bd. of Trs. of Austin Indep. Sch. Dist.,*
706 S.W.2d 956 (Tex. 1986) ........................................... 20, 21, 22, 23

*Creedmoor Maha Water Supply Corp. v. Barton Springs
Edwards Aquifer Conservation Dist*
784 S.W.2d 79, 86 (Tex. App.—Austin 1989, writ denied) ..................... 22

*Dickson v. Strickland,*
265 S.W. 1012 (Tex. 1924) ........................................................ *passim*

*Duncan v. Willis,*
302 S.W.2d 627 (Tex. 1957) ................................................................ 4

*Furr's Supermarkets, Inc. v. Mulanax,*
897 S.W.2d 442 (Tex. App.—El Paso 1995, original
proceeding) ........................................................................................ 6, 7

*Greater Beauxart Garden Municipal Utility Dist. v. Cormier,*
596 S.W.2d 597 (Tex. Civ. App.—Beaumont 1980, no writ) ........ 13, 14

*Honts v. Shaw,*
975 S.W.2d 816 (Tex. App.—Austin 1998, no pet.) ............................ 3

*In re International Profit Associates, Inc.*,
    274 S.W.3d 672 (Tex. 2009) ...............................................................6

*Markowski v. City of Marlin*,
    940 S.W.2d 720 (Tex. App.—Waco 1997, no writ)............................17

*Moore v. Edna Hospital Dist.*,
    449 S.W.2d 508 (Tex. Civ. App.—Corpus Christi 1969,
    writ ref'd n.r.e.) ...............................................................................4

*Rettberg v. Texas Dep't of Health*,
    873 S.W.2d 408 (Tex. App.—Austin 1994, no writ) ..........................17

*Rossano v. Townsend*,
    9 S.W.3d 357 (Tex. App.—Houston [14th Dist.] 1999, no
    pet.) ..............................................................................................8, 12

*San Antonio v. Fourth Court of Appeals*,
    820 S.W.2d 762 (Tex. 1991) ............................................... 22, 23, 25

*Scarborough v. Eubank*,
    53 S.W. 573 (Tex. 1899) ........................................................... *passim*

*Tatum v. Collier*,
    1989 WL 111365, 1989 Tex. App. LEXIS 2473 (Tex.
    App.—Houston [14th Dist.] Sept. 28, 1989, no pet.) (not
    designated for publication) ..............................................................15

*Tex. Dep't of Criminal Justice v. Rangel*,
    595 S.W.3d 198 (Tex. 2020) .............................................................27

*Town of Shady Shores v. Swanson*,
    590 S.W.3d 544 (Tex. 2019) ...........................................................6, 7

*Webb Cnty v. Mares*,
    2024 Tex. App. LEXIS 8721 (Tex. App.—Houston [14th
    Dist.] Dec. 17, 2024, no pet.)............................................................18

*Willet v. Cole*,
    249 S.W.3d 585 (Tex. App.—Waco 2008, no pet.) ..............................3

**Statutes and Rules**

TEX. ELEC. CODE § 3.005(c) ..................................................................23

TEX. ELEC. CODE §§ 4.002-.004 ...........................................................18

Tex. Elec. Code § 221.003............................................................ *passim*

Tex. Elec. Code § 221.003(a)(1) ...........................................................14

TEX. GOV'T CODE § 551.007...................................................................31

TEX. GOV'T CODE § 551.007(c)......................................................... 30, 31

TEX. GOV'T CODE § 551.041...................................................................27

TEX. GOV'T CODE §§ 551.143-.146............................................................6

TEX. GOV'T CODE §§ 1251.003(c), 551.043 .........................................23

TEX. GOV'T CODE § 1251.052.................................................................18

TEX. R. APP. P. 47.7.................................................................................15

**Other Authorities**

Amy Coney Barrett, *Listening to the Law: Reflections on the Court and Constitution* 212 ...............................................................2

BLACK'S LAW DICTIONARY (10th ed. 2009) .........................................27

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1988).............................................................................................27

Tex. Att'y Gen. Op. No. KP-0300 (2020) ..............................................31

## STATEMENT REGARDING REFERENCES TO
## THE CLERK'S RECORD AND REPORTER'S RECORD

- The Clerk's Record is cited as **[Volume #].CR.[Page #]**.

- Trial testimony contained in the Reporter's Record is cited as **[Volume #].RR.[Page #]**.

- Hays County's trial exhibits contained in the Reporter's Record are cited as **[Volume #].RR.P.Ex-[Exhibit #]**. For example, 4.RR.P.Ex-1a refers to Plaintiff's Exhibit No. 1a, which is contained in Volume 4 of the Reporter's Record.

# ARGUMENT & AUTHORITIES

## I.  A TOMA Notice Defect—Even If One Occurred Here—Does Not Justify Overturning the Results of a Free and Fair Election.

As established in the record, Hays County[1] recognizes the importance of TOMA and its obligation to operate in conformity to that statute. As discussed in Appellants' Principal Brief and at pages 16-32 of this Reply Brief, the County fully complied with TOMA in ordering the challenged bond election. Nevertheless, even if it is determined that the County did not substantially comply with TOMA, invalidating the democratically expressed choice of almost 116,000 Hays County voters is not an available remedy. That is a matter Appellees have failed to effectively counter in their brief.

### A.  Appellees' Brief Misstates the Law of Election Contests.

Appellees characterize the County's contention that even if a "TOMA violation falls within the election contest parameters (Tex. Elec. Code § 221.003) of 'fraud, illegal conduct, or a mistake,' the election contest should be denied unless the evidence shows 'that the result of the

---

[1] Appellants incorporate by reference all of the capitalized and defined terms set forth in their Principal Brief.

1

election was not the true result'" as being an "extreme" argument. *See* Appellees' Brief, at 16. Similarly, Appellees claim that the County's statement that "[a]n election contest can result in changing or dismissing the outcome of an election **only if** there was a defect or mistake sufficient to establish that the declared result was not the actual result" was unsupported by any case authority. *See id.* at 9.

Far from being extreme and unsupported by authority, the County's position is mandated by the plain language of the Election Code:

> (a) The tribunal hearing an election contest shall attempt to ascertain *whether the outcome of the contested election, as shown by the final canvass, is not the true outcome* because:
>> (1) illegal votes were counted; or
>> (2) an election officer or other person officially involved in the administration of the election:
>>> (A) prevented eligible voters from voting;
>>> (B) failed to count legal votes; or
>>> (C) engaged in other fraud or illegal conduct or made a mistake.
> (b) In this title, "illegal vote" means a vote that is not legally countable.

TEX. ELEC. CODE, § 221.003 (emphasis added).

The language of the statute could not be clearer.[2] The issue before

---

[2] United States Supreme Court Justice Amy Coney Barrett may have put it best when she explained, "The basic rules of statutory interpretation are simple: '(1) Read the statute; (2) read the statute; (3) read the statute!'" Amy Coney Barrett, *Listening to the Law: Reflections on the Court and Constitution* 212, Sentinel (2025) citing Henry

the court in an election contest is whether the canvassed result—here, approval of Proposition A by more than 13,000 votes—is the true result. *See Honts v. Shaw,* 975 S.W.2d 816, 822 (Tex. App.—Austin 1998, no pet.) ("The contestant bears the burden of proving that violations occurred ***and that they materially affected the outcome of the election***") (emphasis added); *see also Willet v. Cole,* 249 S.W.3d 585, 589 (Tex. App.—Waco 2008, no pet.) ("An election contestant's burden is a heavy one, and the declared result of an election will be upheld in all cases except where there is clear and convincing evidence of an erroneous result").

Appellees have never disputed the accuracy of the canvass in this election. *See, e.g.,* Appellees' Brief, at 5 ("While the results of a voided election [*i.e.,* this election] are not at issue . . ."). Yet, under the statute, the ultimate question to be determined in an election contest is whether the canvassed result, which in this election is uncontested, is the true result. *See* TEX. ELEC. CODE, § 221.003; *Honts,* 975 S.W.2d at 822; *Willet,* 249 S.W.3d at 589. The election contest statutes are designed to be final,

---

J. Friendly, *Mr. Frankfurter and the Reading of Statutes*, in BENCHMARKS 196, 202 (1967) (quoting Justice Frankfurter).

3

exclusive, and to serve as limits on the courts. *See Moore v. Edna Hospital Dist.,* 449 S.W.2d 508, 521 (Tex. Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.). Those limits exist because election contests present political rather than judicial questions. *See Duncan v. Willis*, 302 S.W.2d 627, 630-31 (Tex. 1957). The courts are able to hear such challenges because of special constitutional and statutory provisions and are strictly limited to the scope of inquiry set out in the election contest statute. *See Carter v. Tomlinson,* 227 S.W.2d 795, 799 (Tex. 1950). That statute defines and restricts the issue to determining if the canvass reflects the true result of the election.

**B.    TOMA Does Not Permit Enforcement of the Act through an Election Contest.**

Appellees suggest that anything can be for the basis of an election contest unless specifically excluded by the election contest statute.[3] That, however, ignores the history set out at pages 18-19 of Appellants' Brief explaining the great reluctance of the Supreme Court to assume jurisdiction over election contests, which are political questions, in the

---

[3] *See* Appellees' Brief, at 8 ("Contrary to the County's argument in its first issue, there is no exception in TOMA saying it does not apply to an election contest, and there is no part of the Election Contest statute (Tex. Elec. Code § 221.003) saying a TOMA violation in ordering the election can be ignored.").

absence of a constitutional amendment and a legislatively provided statutory framework. That framework is exclusive and limited. *See Carter,* 227 S.W.2d at 797. It is a special jurisdiction, and the general legal and equitable powers of the courts do not apply. *See id.* at 799. Section 221.003 of the Election Code sets out the scope of an election contest. An additional ground for an election contest does not become available simply because that ground is not specifically excluded by the statute.

Appellees also fault the County's Brief for not quoting subsection (c) of section 221.003 which provides that: "This section does not limit a provision of this code or *another statute* expanding the scope of inquiry in an election contest." Appellees' Brief, at 8 (emphasis in original). Without any support, Appellees then claim, "TOMA is such a statute." *Id.* It is not.

For one, TOMA does not mention election contests whatsoever. Nor is there anything that even remotely suggests an election contest would be a vehicle for enforcing TOMA. TOMA's enforcement subchapter sets out civil and criminal means of enforcing the statute. The subchapter contains four sections that provide criminal penalties for various types

of violations of the Act. *See* TEX. GOV'T CODE §§ 551.143-.146. In regard to civil enforcement, section 551.141 provides that an action taken in violation of the Act is voidable. The following section 551.142 sets out the means for enforcing a violation of the Act, which is by filing a suit for either injunction or mandamus.[4] Critically, the Supreme Court recently rejected a declaratory judgment effort to invalidate an action allegedly taken in violation of TOMA, and held that such a suit was required to be brought by mandamus or injunction:

> The Open Meetings Act generally provides that an action taken in violation of the Act is "voidable" but goes on to state very clearly the authorized mechanism to obtain that result: a suit "by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation" of the Act. TEX. GOV'T CODE §§ 551.141-.142(a).

*Town of Shady Shores v. Swanson,* 590 S.W.3d 544, 554 (Tex. 2019).

---

[4] Appellees did initially file a suit for mandamus and injunction. (2.CR.428-450). Mandamus is a remedy that can be obtained very quickly, including through proceedings in the appellate courts if the relator is unsuccessful in the district court. It must, however, be pursued in an expeditious manner as "delaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay." *In re International Profit Associates, Inc.,* 274 S.W.3d 672, 676 (Tex. 2009); *Furr's Supermarkets, Inc. v. Mulanax*, 897 S.W.2d 442, 443 (Tex. App.—El Paso 1995, original proceeding) (mandamus denied because relator filed its motion on the day documents were due, which was four months after the oral ruling and one month after the written order and there was no justification for the delay). Here, Appellees filed their suit for mandamus ***more than two months after*** the challenged August 13 Meeting and after early voting had already started. (2.CR.428-450).

The Supreme Court went on to explain that "[TOMA] contains a limited waiver [of immunity] for suits seeking certain types of relief and *is thus properly read to authorize only those types of relief*." *Id.* at 555 (emphasis added).[5]

Not only does Appellees' statement that TOMA expands the scope of inquiry find no support in the statute, but it is contrary to Supreme Court authority recognizing the limits on enforcement mechanisms for that Act.

C. **Appellees Attempt to Expand the Scope of an Election Contest by Relying on *Dickson v. Strickland*; However, that Opinion Is Largely Irrelevant to the Issues in this Case.**

Appellees point to *Dickson v. Strickland,* 265 S.W. 1012 (Tex. 1924), a case they claim "is on point." Appellees' Brief, at 10. Appellees note that *Dickson* stands for the proposition that elections are a process and that matters that occur before election day can be considered in an election contest. Although Hays County does not agree with Appellees' characterization of that point as the Court's holding—because it was

_____

[5] It did note that courts in the past, including the Supreme Court, had granted relief in declaratory judgment suits raising TOMA issues, but stated that the issue of the propriety of a declaratory judgment action and whether its waiver of immunity extended to a TOMA action was not raised. *See id.* and nn. 11 and 12.

7

dictum—the County does acknowledge that certain pre-election-day occurrences may be considered in a contest.[6] What the County disagrees with is any suggestion that a defect in an election order is necessarily sufficient to invalidate an election, which is a matter *Dickson* did not address.

*Dickson* is a somewhat unusual case. It was a response to six certified questions from the Third Court of Appeals relating to the district court's jurisdiction to entertain the case and to issues relating to the eligibility of a woman, Mrs. Miriam Ferguson, to be a candidate for governor.[7] *See Dickson,* 265 S.W. at 1014-1015. The Supreme Court determined that the judiciary had no jurisdiction over the underlying suit and that Mr. Dickson had no standing. *See id.* at 1018-1019. Accordingly, virtually everything else the Court said was dictum. Nonetheless,

---

[6] Although the County does not challenge the *Dickson* court's conclusion that a contest is not limited to actions that occur on election day, it should be noted that post-*Dickson* cases have frequently rejected that conclusion. This is apparent from one of the cases cited by appellees, *Rossano v. Townsend,* 9 S.W.3d 357, 362 (Tex. App.—Houston [14th Dist.] 1999, no pet.), which lists both cases that follow *Dickson* on that issue and cases that reject *Dickson*'s position.

[7] The plaintiff argued that (1) Mrs. Ferguson was ineligible to be a candidate for governor by virtue of her sex, (2) she was ineligible by virtue of her status of a married woman, (3) she was ineligible due to her status as wife of James Ferguson who had been impeached and disqualified from holding office in Texas, and (4) James Ferguson was the actual candidate and Mrs. Ferguson's name was being used by him to evade the effect of his impeachment.

whether dictum or holding, the opinion did not suggest that a contest could be successful if it did not establish that the canvassed result was not the true result.

D. **Appellees Improperly Dismiss the Supreme Court's Opinion in _Scarborough v. Eubank._**

_Scarborough v. Eubank,_ 53 S.W. 573 (Tex. 1899) was an election contest challenging whether the county judge had authority to order an election when the petition—a prerequisite to ordering the election—had an allegedly insufficient number of valid signatures. The core teaching of that case is that:

> The important matter in every election is that the will of the voters should be fairly expressed, correctly determined, and legally enforced. Compared to this, the question of the manner and time or ordering the election is of trivial moment.

_Scarborough,_ 53 S.W. at 107.

Appellees dismiss _Scarborough,_ saying (1) its holding is applicable only to cases requiring a fact determination such as the one required to verify petition signatures, (2) it does not address whether an election contest can be sustained where there was no valid order for the election, (3) it is irrelevant because it predates TOMA, and (4) the later opinion of _Dickson v. Strickland,_ is on point and inconsistent with _Scarborough. See_

9

Appellees' Brief, at 9-10. Appellees are wrong on each of these four points.

The teaching of *Scarborough* is not limited to matters relating to fact determinations. While *Scarborough* does say "the decision of the officer ordering the election as to the competency of the signers of the petition was intended to be final," *Scarborough,* 53 S.W. at 575, the reason for not questioning the fact determination, which the Court explained earlier in that same paragraph, was that "[i]t is the vote of the electors at the election, and not the signature to the petition, which determines the location of the county seat" and to change the determination of the validity of the signatures on the petition "after the election is passed, and the change carried by the popular vote, would certainly subserve no good purpose." *Id.* The Court is saying on the last page of its opinion what it set out on the first page—the important issue in a contest is that the will of the voters is correctly declared and any question regarding the ordering of the election "is of trivial moment." *Id.*

Similarly, Appellees' contention—that *Scarborough* does not address whether an election contest can be sustained when there is no valid order for the election—is incorrect. To the contrary, the Supreme Court set out the question in the case as being whether, in an election

contest, "it was competent to contest the validity [of the election] upon the ground that the county judge had no authority to order it, because of the disqualification of the applicants for the election." *Scarborough,* 53 S.W. at 574. In other words, it considered whether a defect in the order calling the election was a valid consideration and determined that issues relating to the method of calling the election were largely irrelevant—or "of trivial moment"—because the overriding issue was whether the will of the voters was fairly expressed and correctly decided.

Obviously, *Scarborough* predated TOMA, but that is irrelevant. The lesson of *Scarborough* and its progeny is that a defect in ordering an election is largely immaterial once the election has been held and the people have spoken with their votes. Whether that defect is due to the failure to have a petition with the required number of valid signatures or an alleged TOMA posting error, the legal issue is the same, and the question of the validity of the election order will not cause the result of the election to be overturned.

As noted above, the doctrine in *Dickson* that pre-election day matters can be considered in an election contest is both undisputed in this case and is immaterial to it. The issue here is whether the pre-

11

election day action regarding posting notice of a commissioners court meeting can be sufficient to overturn the result of an election. *Dickson* did not address that issue, and under Tex. Elec. Code § 221.003, *Scarborough,* and many other cases cited in the County's Principal Brief, it cannot serve as grounds for overturning an election where there is no dispute as to the accuracy of the canvassed result.

E. **The Cases Cited by Appellees in Support of their Contention that a Defective TOMA Notice Will Invalidate an Election Do Not Stand for that Proposition.**

Appellees cite five cases they contend lead to the conclusion that an election can be overturned due to a TOMA violation.  None of these cases offer support, though, for ignoring the clear language of the election contest statute or for overturning this election.

Three of the cases, *Dickson* (discussed above)*, Cohen v. Clear Lake City Water Authority,* 687 S.W.2d 406 (Tex. App.—Houston [14th Dist.] 1985, no writ), and *Rossano v. Townsend,* 9 S.W.3d 357 (Tex. App.—Houston [14th Dist.] 1999, no pet.) essentially stand for the proposition that an election contest is not necessarily limited to matters that occur on election day.  The County does not dispute that general proposition. Only one of the three, *Rossano,* granted any relief, and that related to

12

violations of the city charter, not TOMA.

The sole case that involves TOMA is *Greater Beauxart Garden Municipal Utility Dist. v. Cormier,* 596 S.W.2d 597 (Tex. Civ. App.—Beaumont 1980, no writ). In their brief, Appellees claim that "the TOMA meeting notice [in *Beauxart Garden*] was as clearly inadequate as the Hays County notice in this appeal." Appellees' Brief, at 17. They go on to claim that the court noted that the meeting notice there contained specific language such as: "Take necessary action on all related business to election" and "Discuss and take action on business pertaining to upcoming election, January 20, 1979." *Id.* at 17-18. *Beauxart Garden*, however, does **not** attribute that language to the TOMA notice. Rather, it comes from the board's **minutes** as specifically noted by the court of civil appeals. *See Beauxart,* 596 S.W.2d at 600, nn. 5 and 6.[8]

The only description of the notice comes in a quotation from the district court's findings:

> 4. The notice or agenda, under the Public Meeting Law, concerning the meeting which attempted to call the election of January 20, 1979, was not proper, nor was it timely filed and posted.

---

[8] Appellees cite to notes 3 and 5. From an examination of those footnotes, it seems certain that they intended to refer to notes 5 and 6 rather than 3 and 5.

*Id.* at 599. In other words, *Beauxart Garden* did not identify what the notice said, nor did it even clarify whether the notice was posted at all. Further, while it is clear that the court believed the TOMA notice was deficient, it is far from clear that the court determined a TOMA violation **by itself** would lead to rejecting the election. Instead, there were myriad deficiencies in this election: no election order was adopted, the election judge was not given a proper poll list of eligible voters, the poll list that was used was for a precinct whose boundaries did not coincide with those of the district, the election judge had no map of the district boundaries and was mistaken as to what those boundaries were, and the polling place was located in a precinct that was not within the district. *See id.*

The mere fact that the votes were cast in a precinct located outside the district was found by the court to prevent any of those votes from being counted. *See id.* at 601. For that exact reason, the court concluded that the canvassed result was not the true result because illegal votes were counted, which under Tex. Elec. Code § 221.003(a)(1), is a specific ground for a contest. *See id.* Here, unlike in *Beauxart Garden,* Appellees have never suggested—and the District Court did not find—that illegal votes were cast or that the canvassed result was not the true result.

The last of the five cases relied on by Appellees is *Tatum v. Collier,* 1989 WL 111365, 1989 Tex. App. LEXIS 2473 (Tex. App.—Houston [14th Dist.] Sept. 28, 1989, no pet.) (not designated for publication).[9] The case does not involve TOMA, but it did invalidate a disincorporation election because it found that the signatures on the petition required to trigger the election were insufficient. In that regard, it appears to be contrary to the Supreme Court's decision in *Scarborough* as well as the one other Supreme Court case, three writ-refused cases, and two other court of civil appeals cases cited in Appellants' Principal Brief that follow *Scarborough*. *See* Appellants' Brief, at 24-26. In addition to the fact that *Tatum* conflicts with higher judicial authority, because the case was decided before January 1, 2003, and was not designated for publication, it has no precedential value. *See* TEX. R. APP. P. 47.7.

> **F.** **Appellees Entirely Ignore the Fact that Even If There Were a TOMA Notice Violation, the Election Order Would Be Voidable Rather than Void and Was Presumed to Be Valid at the Time of the Election, After Which the Issue Became Moot.**

On pages 27-29 of their Brief, Appellants discuss how an action

---

[9] When citing the case, Appellees omitted the parenthetical that is required if a case not designated for publication is cited. *See* TEX. R. APP. P. 47.7. The required parenthetical phrase is a signal that the case has no precedential value.

taken in violation of TOMA is voidable (not void) and presumed to be valid unless and until adjudicated and declared to be void. Here, there was no adjudication until eight months after the election was held. By that time, the County's authority under the Election Order had ended, and any challenge to it became moot. Tellingly, Appellees offer no rebuttal or dissent to that point.

## II.    <u>The County's August 13 Notice Complied with TOMA.</u>

Appellees attempt to hide the weakness of their TOMA arguments by casting unsupported aspersions about Hays County. Initially, Appellees claim that Hays County has a "lack of appreciation for" TOMA. Appellees' Brief, at 6. As set out in its Principal Brief, Hays County's actions demonstrate that it sees TOMA and open government as critical components of representative democracy. Hays County fully complied with TOMA but also seeks to uphold the will of its constituents, who overwhelmingly voted to approve the $440 million County wide bond package by an over 13,000-vote margin. (4.RR.P.Ex-14; 4.RR.P.Ex-15). Defending the results of a free and fair election epitomizes honoring the precepts of a representative democracy. The arguments in Appellees' brief establish that their real complaint is with the outcome of the

election. But that alone does not establish a TOMA violation and/or an illegal election.

Additionally, Appellees claim the County acted deceitfully in a concerted effort to conceal the subject of the August 13 Meeting from the public, but there is no evidence in the record to support this assertion. *See* Appellees' Brief, at 24-25, 29. In fact, Appellees can point to no evidence to suggest that the County tried to mislead the public or intentionally concealed the subject of the August 13 Meeting.

As explained below, Appellees' rebuttal arguments do not establish that the County's August 13 Notice violated TOMA for lack of specificity. This Court should therefore reverse the judgment below and hold that the August 13 Notice substantially complies with TOMA's notice requirements.

### A. Appellees Continue to Conflate Passing the Election Order with Authorizing the Bonds.

Courts evaluate "substantial compliance" with TOMA's notice requirements by comparing (1) the content of the notice, with (2) the action taken at the meeting. *See Markowski v. City of Marlin,* 940 S.W.2d 720, 726 (Tex. App.—Waco 1997, no writ); *Rettberg v. Texas Dep't of Health*, 873 S.W.2d 408, 412 (Tex. App.—Austin 1994, no writ); *In re City*

*of Amarillo,* 2023 Tex. App. LEXIS 6252, at \*12 (Tex. App.—Amarillo Aug. 16, 2023, pet. dism'd); *Webb Cnty v. Mares,* 2024 Tex. App. LEXIS 8721, at \*8 (Tex. App.—Houston [14th Dist.] Dec. 17, 2024, no pet.).

Both in this Court and the trial court, Appellees' arguments hinge on a fundamental misunderstanding of the scope and character of the action taken at the August 13 Meeting. Appellees claim that "[t]he action taken was to set in motion 31 *road* projects . . . at a cost of $778 million" that "would require a property tax increase for 30 years of financing[.]" Appellees' Brief, at 7-8 (emphasis in original).

In fact, the action taken at the August 13 Meeting was far narrower—the Commissioners Court passed the Election Order, the effect of which was to place Proposition A on the ballot so that the citizens of Hays County could make the ultimate decision on whether to provide voter authorization for the bonds. (4.RR.P.Ex-8).[10] At the August 13

---

[10] As the Texas Association of School Boards Legal Assistance Fund explains on page 5 of its amicus brief, Texas law imposes election notice obligations on Hays County that are separate and distinct from notice under TOMA. *See* TEX. ELEC. CODE §§ 4.002-.004, .009; TEX. GOV'T CODE § 1251.052. Appellees do not contend that Hays County failed to provide lawful notice of the election for Proposition A. And in any event, the record establishes that, in conformity with Texas law, the County (1) posted the Election Order (4.RR.P.Ex-8) and a Voter Information Document (4.RR.P.Ex-11) in four public places for more than 21 days before election day (4.RR.P.Ex-12), (2) posted the Notice of the Bond Election (4.RR.P.Ex-9), the Voter Information Document (4.RR.P.Ex-11), the Notice of Proposition A's language (4.RR.P.Ex-10), and a sample ballot on the County's website for more than 21 days

Meeting, the Commissioners Court did **not** vote to authorize the bonds or fund the various road projects. As the undisputed evidence established at trial, Commissioners Court action to set the road projects "in motion" would only come if the bond package was approved by the voters of Hays County, and there would be subsequent notices and Commissioners Court meetings related to the sale of approved bonds. (2.RR.94-95, 113-114). None of those actions occurred at the August 13 Meeting.

In other words, Appellees *continue* to conflate (i) calling the bond election with (ii) selling or authorizing bonds—which are two procedurally and substantively different actions. Here, it is undisputed that the action taken at the August 13 Meeting only called an election—not the issuance of the bonds or the funding of the road projects. (4.RR.P.Ex-4; 4.RR.P.Ex-8).

Moreover, the information that Appellees contend should have been included in Agenda Item No. K-2—*i.e.,* the number of road projects, the amount of the proposed bonds, etc.—are potential consequences that might flow from consideration of the Election Order. The Supreme Court

---

before election day (4.RR.P.Ex-12), and (3) published Notice of the Bond Election (4.RR.P.Ex-9) in the San Marcos Daily Record (a newspaper of general circulation in Hays County) on October 6 and 13, 2024. (4.RR.P.Ex-13).

has held in no uncertain terms that "[a]s long as a reader is alerted to the topic for consideration, ***it is not necessary to state all of the consequences which may flow from consideration of the topic***." *Cox Enters., Inc. v. Bd. of Trs. of Austin Indep. Sch. Dist.*, 706 S.W.2d 956, 958 (Tex. 1986) (emphasis added).

At bottom, Agenda Item No. K-2 (*i.e.* "Discussion and possible action to approve an order calling a bond election for November 5, 2024 to be held within Hays County, Texas") fairly alerted the public that the Commissioners Court would take the action that it ultimately did—approving the Election Order. (4.RR.P.Ex-3a). On this basis alone, the Court should reverse the decision below and hold that no TOMA notice violation occurred.

## B. The Supreme Court Has Not Endorsed Appellees' Sliding Scale of Specificity.

Throughout their Brief, Appellees advance a "sliding scale" standard for evaluating the adequacy of TOMA notice. They argue that TOMA requires "greater specificity of the meeting notice when there is greater public interest in the subject[.]" Appellees' Brief, at 23; *see generally id.* at 21-24.

For two reasons, the Court should decline to adopt this approach.

First, each of the cases relied upon by Appellees for the "sliding scale" rule are based on faulty interpretations of the Supreme Court's decision in *Cox Enterprises, Inc. v. Board of Trustees of AISD*. And second, Appellees' "sliding scale" approach is unworkable and would have the counter-productive effect of reducing public input during local government decision making.

Appellees' sliding scale standard is derived from a line of appellate decisions that rely on the following sentence in *Cox*: "The Board did not provide full and adequate notice, *particularly where the subject slated for discussion was one of special interest to the public.*" *Cox,* 706 S.W.3d at 959 (emphasis added). Notably, the Supreme Court did **not** pronounce a rule that specificity of notices must increase in proportion to the public's interest in a meeting. *See id.* To the extent that certain courts of appeal have purported to derive such a rule from *Cox,* those decisions are based on a liberal over-reading that has no basis in the opinion itself. The core of *Cox's* holding is simply that a notice must be "full and adequate" yet need not be "as specific as it could be" or contain a description of "all the consequences which may necessarily flow" from the meeting's subject. *Cox,* 706 S.W.3d at 959 (citing *Tex. Turnpike Auth. v. City of Fort Worth,*

554 S.W.2d 675 (Tex. 1977); *Lower Colo. River Auth. v. City of San Marcos,* 523 S.W.2d 641 (Tex. 1975)).

Importantly, five years after *Cox,* when the Supreme Court revisited TOMA's notice requirements in *San Antonio v. Fourth Court of Appeals*, the Court did **<u>not</u>** endorse a sliding scale approach, nor did it clarify that *Cox* imposed such a rule. *See* 820 S.W.2d 762, 765 (Tex. 1991) (summarizing the holding in *Cox*).[11]  Moreover, it rejected the argument in that case that greater specificity was required. *See id.*

Putting aside that the sliding scale approach is unsupported by *Cox,* it is also unworkable and would potentially diminish public input in the decision-making of governing bodies. Adopting Appellees' "sliding scale" approach would transform compliance with TOMA into subjective guesswork. In many instances, the sliding scale approach would force governing bodies to speculate about the degree of public interest of a

---

[11] That the Texas Supreme has not adopted a "sliding scale" standard for specificity of TOMA notices is best demonstrated by Supreme Court Justice Mauzy's dissenting opinion in *San Antonio.* Justice Mauzy cited *Creedmoor Maha Water Supply Corp. v. Barton Springs-Edwards Aquifer Conservation Dist.* for the proposition that "[f]ull disclosure" under TOMA's notice provision "requires a correspondence between the likely degree of public interest in a topic with the specificity with which the topic is stated in the notice." *Id.* at 779 (Mauzy, J., dissenting) (quoting 784 S.W.2d 79, 86 (Tex. App.—Austin 1989, writ denied)). The fact that Justice Mauzy's dissenting opinion discussed the sliding scale approach, while the majority opinion did not, strongly suggests that the majority did not endorse the sliding scale approach or intend for *Cox* to pronounce such a rule.

meeting topic *before* the governing body has any understanding of the degree of public attention to the matter. The only recourse for governing bodies would be to err on the side of greater specificity, which the Supreme Court has recognized can oftentimes disserve the purposes of TOMA. *See San Antonio*, 820 S.W.2d at 766 ("Far from serving the purposes of the Act, this degree of specificity [in a pre-meeting notice] would so overwhelm readers that it would prove even less informative than the current notice.").

Moreover, in the context of a bond election order, hyper-specificity risks limiting the governing body's discretion to debate and consider modifying the scope and purpose of a bond election order during the narrow window of time that State law mandates such deliberations must occur. *See* TEX. ELEC. CODE § 3.005(c); TEX. GOV'T CODE §§ 1251.003(c), 551.043. Adopting Appellees' sliding scale approach could well transform a county commissioners court's meeting on a bond election order into an "all-or-nothing" vote—which would be counter-productive to providing public input as a means of influencing government decision making.

In sum, the Court should reject Appellees' sliding scale test because it (1) has no foundation in *Cox* or any other Supreme Court decision, and

23

(2) would be unworkable in practice and diminish public input in local government decision making.

## C. TOMA Notice Need Not Be Tailored to Reach Those Specific Individuals Whose Private Interests Will Be Most Affected by the Proposed Government Action.

Appellees—who undeniably opposed Proposition A on policy grounds—dedicate substantial portions of their brief arguing that the August 13 Notice should have been more specific because the projects were controversial to ***certain*** citizens in Hays County. Apparently, to prove this point, Appellees provide a map that depicts which County precincts voted against Proposition A (largely in the western and northern parts of Hays County). *See* Appellees' Brief, at 5.[12] They also complain that notice should have been more specific because the road projects will allegedly have environmental and "lifestyle impacts to the rural areas in ***western*** Hays County." *Id.* at 22-23 (emphasis added).[13]

Appellees' argument that the notice should have been tailored to

---

[12] On page 5 of their Brief, Appellees also cite to their summary judgment Exhibit No. P30a. *See* Appellees' Brief, at 5 (citing 2.CR.759). Appellees fail to mention, however, that the District Court sustained the County's hearsay objection to Exhibit No. P30a and struck it from the record. (3.CR.2113).

[13] Of note, the supposed environmental and lifestyle impacts that Appellees claim will result from the road projects are not supported by any citations to the record. *See* Appellees' Brief, at 22-23. That's because the record contains zero evidence to back up these unsupported claims. And in any event, Appellees' policy concerns with the road projects are wholly irrelevant to this appeal.

address the concerns of those Hays County residents that could be most affected by Proposition A would create an untenable standard, that would require governmental entities to determine who are "most affected" by potential action and attempt to craft language that might give that group adequate notice. Moreover, the Supreme Court has previously considered Appellees' argument, and soundly rejected it:

> **However, we need not go further and inquire into whether a notice was tailored to reach those specific individuals whose private interests are most likely to be affected by the proposed government action**, as [petitioner] would have us do. The intended beneficiaries of the Act are not individual citizens, such as the particular landowners affected by this condemnation, but members of the interested public. **If a "reader" is given notice, the requirement of the Act is satisfied and its purpose served.**

*San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765 (Tex. 1991) (emphasis added).

In fact, the intended beneficiaries of TOMA notice are all members of the public. *See id.* Here, the August 13 Notice fairly alerted all members of the public that the Commissioners Court would discuss and possibly approve "an order calling a bond election for November 5, 2024, to be held within Hays County, Texas[.]" (4.RR.P.Ex-3a). Which is exactly

what the Commissioners Court did at the August 13 Meeting – it passed the Election Order, thereby empowering the citizens of Hays County to decide whether the bond package should be approved. The fact that Appellees or others opposed Proposition A on policy grounds is not a basis to require the County provide more specific notice under TOMA.

**D.** **The Court Can and Should Consider the Online August 13 Notice, Which Included a Draft of the Election Order.**

Appellees' Brief confirms that their true TOMA complaint is simply about the form in which the County posted notice. They effectively concede that the information contained in the Online August 13 Agenda satisfies their TOMA complaints, but nonetheless argue that the will of their fellow Hays County citizens should be overturned because that information wasn't also posted on a piece of paper at the County courthouse.

Thus, Appellees argue that the Court cannot even consider the Draft Election Order that was hyperlinked to the Online August 13 Notice because it doesn't appear within the four corners of the agenda. *See* Appellees' Brief, at 26-27. In so arguing, Appellees necessarily conflate an "agenda" with the more general term used in the statute:

"notice."

TOMA requires that "[a] governmental body shall give written *notice* of the date, hour, place, and subject of each meeting held by the governmental body." TEX. GOV'T CODE § 551.041 (emphasis added). The term "agenda" does not appear anywhere in the statute's notice provision, nor does TOMA prescribe a specific form that written notice must take.[14]

The Court should therefore reject Appellees' position that TOMA requires the pre-meeting notice to be contained in the four corners of an agenda. TEX. GOV'T CODE § 551.041 does not require notice-through-agenda, instead using the far more general term "written notice." Because the Draft Election Order was easily available through the Online August 13 Notice, it was part of the notice required under TOMA.

Assuming *arguendo* that the Physical August 13 Notice's language does not satisfy TOMA's notice requirements, the Court should nonetheless reverse because the statutorily required and much more

---

[14] Because "notice" is undefined in TOMA, the Court can look to dictionary definitions to determine its common, ordinary meaning. *See Tex. Dep't of Criminal Justice v. Rangel,* 595 S.W.3d 198, 208 (Tex. 2020). Black's Law Dictionary defines "notice" as "legal notification required by law or agreement." *Notice,* BLACK'S LAW DICTIONARY (10th ed. 2009). Similarly, Merriam Webster defines "notice" as "warning or intimation of something : announcement." *Notice,* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1988).

accessible Online August 13 Notice contained all the specific details demanded by Appellees. This commonsense approach honors TOMA's purpose and prevents an outcome in which an election is overturned for the mere fact that a notice was posted online rather than at a physical location.

### III.  Limiting Each Citizen to Three Minutes of Public Comment Is Not a Violation of TOMA.

As an initial matter, Appellees incorrectly claim that the trial court "**held** that the Hays County Commissioners Court violated TOMA by imposing an unreasonable time limit of 3 minutes on public testimony for" Agenda Item No. K-2. *See* Appellees' Brief, at 31 (emphasis added).

Appellees' claim is demonstrably false. A plain review of the summary judgment order (3.CR.2104-2105), final judgment (3.CR.2114-2116) and findings of fact and conclusions of law (3.CR.2166-2169) show that the District Court did **not** make a ruling on—or even discuss—Appellees' TOMA-time-limit argument.[15]

As explained in greater detail in Appellants' Brief, the minutes of

---

[15] Appellees did not even include a conclusion of law regarding their claim that the three-minute time limit for public comment was unreasonable in the proposed findings of fact and conclusions of law they submitted to the trial court. (3.CR.2123-2127).

the August 13 Meeting show that a total of 24 items were on the agenda—meaning 23 items were unrelated to the Election Order. (4.RR.P.Ex-4). Moreover, a total of 29 citizens took the opportunity to voice their opinions regarding placing Proposition A on the November 5 ballot. (4.RR.P.Ex-4). Limiting public comment to three minutes per speaker in these circumstances was entirely reasonable.

Appellees complain that the three minute time limit gave members of the public 5.8 seconds to discuss each road project. *See* Appellees' Brief, at 33.

This is a red herring. The subject in question at the August 13 Meeting was not the advisability of approving or funding the individual road projects. Rather, the single subject was whether the Commissioners Court should pass the Election Order to place Proposition A on the ballot so that the citizens of Hays County could make the ultimate decision on whether to provide voter authorization for the bonds. (4.RR.P.Ex-8). Appellees offer no argument on why three minutes was inadequate to address whether the Commissioners Court should call an election.

Moreover, Appellees' analysis of why a three-minute limit was inappropriate demonstrates the fallacy of their argument.

Conspicuously, Appellees do not offer a per-speaker time limit that they contend would have been reasonable. Would one minute per road project have been sufficient for Appellees? If so, that would mean *each* member of the public wanting to discuss this agenda item would be entitled to 31 minutes to address the Commissioners Court. Because 29 citizens addressed the Commissioners Court regarding the Election Order on August 13, the Commissioners Court would have to allow up to a whopping **14 hours and 59 minutes** of public comment dedicated solely to the Election Order.[16]

By permitting governing bodies to impose "reasonable" time limits on public comment, the Legislature clearly recognized that governing bodies must be able to balance the importance of public comment against the need to conduct an orderly and efficient meeting. *See* TEX. GOV'T CODE § 551.007(c). At a meeting in which 24 items were discussed, and some 29 citizens exercised their right to address the Commissioners Court about the Election Order for nearly 90 minutes, there is nothing unreasonable or unlawful about limiting each speaker to three minutes.

---

[16] Even a 30 second per road project time limit would have resulted in 15.5 minutes per speaker, which equates to **7 hours and 29.5 minutes** for all 29 speakers.

Appellees' other argument hinges on a technical "gotcha." They claim that a free and fair election in which 115,857 Hays County voters cast their ballot should be overturned because the Commissioners Court didn't formally adopt a written order in advance of the August 13 Meeting that set forth a per speaker time limit. As explained in greater detail in Appellants' Brief, Appellees' position lacks textual support in TOMA and is a facially absurd interpretation of what the statute requires. *See* Appellants' Brief, at 52, 55-58.[17]

At bottom, the only reasonable interpretation of TEX. GOV'T CODE § 551.007(c) is that governing bodies may adopt meeting-specific rules that impose time limits on public comment, so long as those rules are reasonable. *See* Tex. Att'y Gen. Op. No. KP-0300 (2020). Which is exactly what the Commissioners Court did in this instance. The Court should therefore reject Appellees' argument that Hays County violated TOMA

---

[17] Appellees' position would also seem to present an unworkable dilemma for governing bodies. According to Appellees, the Hays County Commissioners Court was required to include an agenda item on the August 13 Notice regarding the adoption of a formal written rule setting public comment time limits for that very same meeting. Under TOMA, members of the public would then have the opportunity to address the Commissioners Court regarding that subject. *See* TEX. GOV'T CODE § 551.007. But would the Commissioners Court be allowed to impose reasonable time limits when the public was discussing that topic? According to Appellees, the answer is no because, absent a formal written order, *any* time limit violates TOMA. This demonstrates the absurdity of Appellees' position.

when it limited public comment to three minutes per speaker at the August 13 Meeting.

## CONCLUSION AND PRAYER

For the foregoing reasons, Hays County respectfully requests that the Court reverse the District Court's Final Judgment in full and render judgment in its favor. Specifically, the County requests that the Court enter the judicial declarations set forth the "Conclusion and Prayer" Section on pages 59-61 of its Principal Brief.

Respectfully submitted,


By:   /s/ *Michael Shaunessy*
      Michael Shaunessy, Lead Attorney
         State Bar No. 18134550
         mshaunessy@mcginnislaw.com
      Ian Davis
         State Bar No. 24120793
         idavis@mcginnislaw.com
      **MCGINNIS LOCHRIDGE LLP**
      1111 W. 6th Street, Suite 400
      Austin, Texas 78703
      (512) 495-6000
      (512) 495-6093 (fax)

      C. Robert Heath
         State Bar No. 09347500
         bheath@bickerstaff.com
      **BICKERSTAFF HEATH DELGADO
      ACOSTA LLP**
      1601 S. MoPac Expressway
      Suite C400
      Austin, Texas 78746
      (512) 472-8021


**ATTORNEYS FOR APPELLANTS**

# CERTIFICATE OF COMPLIANCE

I hereby certify that Appellants' Reply Brief complies with the word count limit of Texas Rule of Appellate Procedure 9.4(i)(2)(B) and the typeface requirements of Texas Rule of Appellate Procedure 9.4(i) because it has been prepared in a conventional typeface no smaller than 14-point font and 12-point font for footnotes. Excluding the contents listed in Texas Rule of Appellate Procedure 9.4(i)(1), this Brief contains 7,153 words, as counted by Microsoft 365 apps for enterprise.

*/s/ Michael Shaunessy*
Michael Shaunessy

# CERTIFICATE OF SERVICE

I certify that on November 13, 2025, a true and correct copy of the above and foregoing pleading was served on all counsel of record by the Electronic Service Provider if registered, otherwise by email, as follows:

Bill Aleshire
  bill@aleshirelaw.com
**ALESHIRELAW, PC**
3605 Shady Valley Drive
Austin, Texas 78739

William G. Bunch
  bill@sosalliance.org
Robert Levinski
  bobby@sosalliance.org
**SAVE OUR SPRINGS ALLIANCE**
4701 Westgate Blvd, Ste. D-401
Austin, Texas 78745

**Attorneys for Appellees**

Lynn Saarinen, Assistant
Attorney General
  Lynn.saarinen@oag.texas.gov
**ATTORNEY GENERAL OF TEXAS**
**FINANCIAL LITIGATION**
**SECTION, GENERAL LITIGATION**
**DIVISION**
MC-017
P.O. Box 12548
Austin, Texas 78711

**Attorney for the Attorney**
**General of the State of Texas**

/s/ Michael Shaunessy
Michael Shaunessy

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108029022
Filing Code Description: Response
Filing Description: Appellants' Reply Brief
Status as of 11/13/2025 4:20 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ian M.Davis | | idavis@mcginnislaw.com | 11/13/2025 3:51:54 PM | SENT |
| Raymond Abarca | | Raymond.Abarca@oag.texas.gov | 11/13/2025 3:51:54 PM | SENT |
| Michael Shaunessy | | mshaunessy@mcginnislaw.com | 11/13/2025 3:51:54 PM | SENT |
| Julie Denny | | jdenny@mcginnislaw.com | 11/13/2025 3:51:54 PM | SENT |
| Amy Botelho | | abotelho@mcginnislaw.com | 11/13/2025 3:51:54 PM | SENT |
| Austin Jones | | ajones@mcginnislaw.com | 11/13/2025 3:51:54 PM | SENT |
| Bill Aleshire | | bill@aleshirelaw.com | 11/13/2025 3:51:54 PM | SENT |
| Bill Bunch | | bill@sosalliance.org | 11/13/2025 3:51:54 PM | SENT |
| Bobby Levinski | | bobby@sosalliance.org | 11/13/2025 3:51:54 PM | SENT |
| William Gammon | | firm@gammonlawoffice.com | 11/13/2025 3:51:54 PM | SENT |
| Lynn Saarinen | | lynn.saarinen@oag.texas.gov | 11/13/2025 3:51:54 PM | SENT |
| Rosemarie Kanusky | | rkanusky@mphlegal.com | 11/13/2025 3:51:54 PM | SENT |
| Matthew PhilipHines | | mhines@mphlegal.com | 11/13/2025 3:51:54 PM | SENT |